## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RODNEY GRUBBS, | ) | Case No. 23-05593-RLM-7 |
| | ) | |
| Debtor. | ) | |

## ATTACHMENTS TO REPLY TO GRUBBS' "ANSWER" AND
## MOTION FOR IMMEDIATE ENTRY OF ORDER FOR RELIEF

Petitioners Jennifer Butler, Andrew Evans, Melody Woodsum, Eldonna Coates, Jack Handy,

Greg Hilligos, and Branch Lew ("Petitioners"), by counsel, submit the following attachments to

their previously filed "Reply to Grubbs' 'Answer' and Motion for Immediate Entry for Order for

Relief."

Respectfully submitted,

/s/ Matthew Foster
Matthew Foster (Indiana No. 16400-49)

Foster Law LLC
9511 Angola Court, Suite 310
Indianapolis IN 46268
Telephone (317) 399-4686
Email matt@fosterlaw.llc (fax n/a)

Attorney for Petitioners

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 24, 2024, a true copy of the foregoing was filed electronically. Notice of this filing will be sent through the Court's Electronic Case Filing System and it may be accessed through such system. In addition, a copy of the foregoing has been sent by first class, prepaid U.S. mail to Rodney Grubbs, 316 East 11th Street, Brookville IN 47012.

/s/ Matthew Foster
Matthew Foster

Attorney for Petitioners

**STATE OF INDIANA**
**OFFICE OF THE SECRETARY OF STATE**
**SECURITIES DIVISION**

IN THE MATTER OF: )
)
    RODNEY U. GRUBBS )
    and ALL ABOUT PICKLEBALL, LLC )
    DBA "PICKLEBALL ROCKS" )
) Cause No. 24-0001 CD
    RESPONDENTS. ) **FILED**
SECURITIES DIVISION

**CEASE AND DESIST ORDER** JAN 1 2 2024

INDIANA
SECRETARY OF STATE

Petitioner, the Office of the Indiana Secretary of State, Securities Division ("Division"),

has filed its Petition for Cease and Desist Order ("Petition") against Rodney U. Grubbs

("Grubbs") and All About Pickleball, LLC DBA "Pickleball Rocks" ("Rocks"), together

"respondents," for violations of the Indiana Uniform Securities Act, I.C. § 23-19 *et seq.*

("IUSA").

    Pursuant to I.C. § 23-19-6-4 the Securities Commissioner ("Commissioner") may issue a

cease and desist order without a hearing whenever it appears to the Commissioner upon

investigation, that a person has engaged or is about to engage in an act or a practice constituting

a violation of the IUSA and Rules.

    Based on the information presented by the Petition, it appears to the Commissioner that,

respondents have committed securities fraud in violation of I.C. § 23-19-5-1, and respondents

have engaged in the offer and sale of unregistered and nonexempt securities in violation of I.C. §

23-19-3-1.

    THE COMMISSIONER THEREFORE ORDERS that respondents immediately Cease

and Desist from engaging in **any** act that violates the IUSA, Indiana Uniform Securities Rules

(710 IAC 4, *et seq.*), and the Commissioner's Administrative Orders. The Commissioner hereby

determines that this Cease and Desist Order is in the public interest and is necessary for the protection of Indiana investors.

This is an agency action. Pursuant to I.C. § 23-19-6-4(b), upon request by a party, this order will be scheduled for a hearing by the Commissioner. Review of this agency action may be initiated by completing and signing the attached "Petition for Hearing" form and either: 1) mailing your form; or 2) hand delivering a completed form to the Indiana Secretary of State, Securities Division located at 302 W. Washington St., Rm E-111 Indianapolis, IN 46204.

This Order is effective upon date of issuance. Pursuant to I.C.§ 23-19-6-4(b), if a person subject to this Order requests a hearing in the manner set forth above, the matter will be scheduled for a hearing within fifteen (15) days after receipt of such a request.

If a person subject to this order does not request a hearing within forty-five (45) days after the date of service of the order, and no hearing is otherwise ordered by the Commissioner, the order becomes final by operation of law under I.C. 23-19-6-4(d).

ORDERED at Indianapolis, Indiana, this 12th day of January, 2024.


DIEGO MORALES
SECRETARY OF STATE


MARIE CASTETTER
SECURITIES COMISSIONER

**FILED**
SECURITIES DIVISION

JAN 1 2 2024

INDIANA
SECRETARY OF STATE

**STATE OF INDIANA**
**OFFICE OF THE SECRETARY OF STATE**
**SECURITIES DIVISION**

IN THE MATTER OF:  )
  )
    RODNEY U. GRUBBS  )
    and ALL ABOUT PICKLEBALL, LLC  )
    DBA "PICKLEBALL ROCKS"  )
  )
  )    Cause No. 24-0001 CD
    RESPONDENTS.  )

## PETITION FOR CEASE AND DESIST ORDER

Petitioner, the Office of the Indiana Secretary of State, Securities Division ("Division"), files this Petition for Cease and Desist Order ("Petition") against Rodney U. Grubbs ("Grubbs") and All About Pickleball, LLC DBA "Pickleball Rocks" ("Rocks") for violations of the Indiana Uniform Securities Act, I.C. § 23-19 *et seq.* ("IUSA").

This is an enforcement action arising from violations of state securities laws by respondents. Rocks is a pickleball apparel and equipment brand that holds itself out as **the world's most recognized pickleball apparel brand**." (Emphasis maintained). *Exhibit 1.* Pickleball is a "game . . . [c]ombining elements of tennis, badminton, and ping-pong [that] is played with a paddle and plastic ball similar to a wiffle ball." *Exhibit 2.* According to *TIME*, pickleball is "America's fastest-growing sport" and "more than half (52%) of core players . . . are 55 years or older, and almost a third (32.7%) are 65-plus." *Exhibit 3.* Nevertheless, the "pickleball community" remains relatively close-knit and the sport is popular among an older and wealthier demographic. *Exhibit 4.* In 2008, Grubbs "became a paddle distributor for Pro-Lite Sports" and "in a brainstorming session [in 2009], [sic] came up with the phrase **Pickleball Rocks**." (Emphasis maintained). *Exhibit 1.* On July 24, 2013, Grubbs filed Articles of Organization for Rocks, which is based in Brookville, Indiana. *Exhibit 5.*

Respondents have "traveled the world . . . preaching the pickleball gospel" since, which appears to include the ongoing offer and sale of unregistered and nonexempt promissory notes.

(Emphasis maintained). *Exhibit 1* at 2. Respondents have solicited investors nationwide, many met through pickleball tournaments where respondents sell their pickleball apparel and equipment. Grubbs has routinely told investors that Rocks has an ever recurrent *one last available slot* to invest at twenty-five-thousand dollars ($25,000.00) and that funds will be used to purchase more inventory. Specifically, "Our goal is to have Pickleball Rocks branded nets, balls, and paddles in every school and college system in the country. We will be able to get better profit margins since we will be buying in larger quantities." *Exhibit 6* at 3.

Respondents' promissory notes, often called "Personal Promissory Notes" ("PPNs"), are neither registered nor exempt from registration. These promissory notes typically guarantee: 1) a twelve percent (12%) interest rate, which is compounded monthly, 2) payment in one lump sum after eighteen (18) months, and 3) eighteen percent (18%) penalty interest should respondents default. Grubbs has routinely encouraged investors to "roll over" their promissory notes by reinvesting their principal and interest into new PPNs. By doing such, respondents have been able to avert repayment. In the "All About Pickleball, LLC Proprietary and Confidential" document ("Memo") provided to potential investors, Grubbs explains that he needs more investment so Rocks can pay back prior investors and continue to grow. *Exhibit 7*. Grubbs has urged investors not to discuss the Memo or exclusive investment opportunity with others. Additionally, Grubbs had at least one investor deposit a portion of their retirement account into a trust account with Equity Trust Company[1], so he could withdraw their funds and issue promissory notes. *Exhibit 8*.

On October 13, 2023, Indiana investors J.M. and M.M. filed suit against Grubbs, in his individual capacity, out of the Franklin Circuit Court, under cause number 24C02-2310-PL-000565. *Exhibit 9*. On November 27, 2023, an Entry of Default Judgment was entered against Grubbs with damages of four-million-nine-hundred-seventy-four-thousand-two-hundred-seventeen dollars and eighty-eight cents ($4,974,217.88) due to Grubb's failure to repay on J.M. and M.M.'s fourteen (14) promissory notes "for the purpose of investing in [his] purported real estate business." *Exhibits 10* and *9* at 2, respectively. On August 1, 2023, North Carolina investors L.P. and D.P. filed suit against Grubbs, in his individual capacity, out of the Franklin Circuit Court, under cause number 24C02-2307-CC-000400. *Exhibit 11*. Grubbs had executed a

---

[1] Equity Trust Company ("ETC") is a self-directed IRA custodian, which has been used to perpetuate securities fraud. See: Securities and Exchange Commission Admin. Proceeding File No. 3-16594.

Promissory Note with L.P. and D.P. in the "principal amount of . . . $430,133.05 – much of which represents [their] retirement money – "plus interest of Fourteen Percent (14%) APR." . . . [payable] "on or before August 18, 2022" . . . The total amount owed on the Note for principal and interest as of August 18, 2022[,] is no less than $559,000.91, not including prejudgment interest." *Id.* at 1. On December 20, 2023, an Order and Entry of Default Judgment was entered against Grubbs and a restitution order remains pending. *Exhibits 12* and *13*, respectively. Grubbs also has a pending lawsuit related to his "purported real estate business," filed under cause number 24C01-2311-CT-000631, which alleges that one-million-two-hundred-sixty-five-thousand-seven-hundred-forty-four dollars and sixteen cents ($1,265,744.16) is owed to Indiana investor P.P., who invested with Grubbs over six (6) promissory notes. *Exhibit 14* at 2.

On December 17, 2023, some aggrieved investors filed a Chapter 7 "Involuntary Petition Against an Individual" against Grubbs, which remains pending before the U.S. Bankruptcy Court of the Southern District of Indiana, under cause number 23-05593-RLM-7. *Exhibit 15.* That same day, Grubbs notified one investor that "I have been working with attorneys the last three days and I cannot talk about anything that is going on right now . . . All payments are being halted for now . . . my bank accounts are empty." *Exhibit 16* at 1. Beyond the various lawsuits, respondents have defaulted on several promissory notes with Indiana investors who have failed to receive agreed upon returns from Rocks.

## II.    JURISDICTION AND AUTHORITY

1.  The Division is part of the Office of the Indiana Secretary of State with jurisdiction over matters relating to securities, as provided by the IUSA.

2.  The Division brings this action pursuant to the authority conferred upon it by I.C. § 23-19-6-4 wherein the Securities Commissioner ("Commissioner") has the authority to conduct a hearing to enforce the provisions of the IUSA and all Rules promulgated thereunder (710 IAC 4 *et seq.*).

3.  The acts and practices constituting violations of the IUSA as alleged herein occurred in Indiana.

4.  The Division reserves all rights to amend this Petition for Cease and Desist Order and/or file an Administrative Complaint to reflect information developed in an ongoing investigation.

## III.    RESPONDENTS

*Rodney U. Grubbs*

5.    Rodney U. Grubbs is the CEO of All About Pickleball, LLC.

6.    Grubbs also goes by the nickname "Rocket."

7.    On July 24, 2013, Grubbs filed the Articles of Organization for All About Pickleball, LLC DBA "Pickleball Rocks" with the Office of the Indiana Secretary of State, Business Services Division ("BSD"). *Exhibit 5*.

8.    Grubbs maintains the website "www.rodneygrubbs.com".

9.    Pursuant to the "Rodney Grubbs Mission and Vision" webpage on that site, Grubbs' mission is "To coach individuals and married couples to make decisions and take actions that will improve their personal, professional, and financial wellbeing." *Exhibit 17*.

10.    To that effect, Grubbs holds himself out as a "Certified Cash Flow Consultant" and "Certified Professional Consultant." *Exhibit 18* at 2.

11.    Grubbs also maintains the website "www.newlevelconsulting.com".

12.    According to the "Testimonials" posted on that site, Grubbs has trained multiple people living "paycheck to paycheck" to become "very successful," by means such as purchasing real estate "with no money down." *Exhibit 19*.

13.    Pursuant to a search conducted through the Indiana Professional Licensing Agency, Grubbs has never held a license with the Real Estate Commission. *Exhibit 20*.

14.    On April 15, 2009, Grubbs filed Articles of Organization for "Your Business Ignited LLC" (DBA "Ignited," "My Neighborhood Team," and "Tasty Legends") with the BSD. *Exhibit 21*.

15.    On May 8, 2023, Grubbs filed a Business Entity Report for Ignited with the BSD, which lists him as its CEO, President, and Registered Agent. *Exhibit 22*.

16.    Grubbs also maintains "www.neverendinghoneymoon.com," the website for "Sharing and Caring For Your Marriage" and "www.helpingpeopleup.com," the website for "Helping you get a flood of customers while drastically decreasing your advertising costs. NOTHING TO IT!" *Exhibits 23* and *24*, respectively.

17.    Grubbs resides in Brookville, Indiana.

*All About Pickleball, LLC DBA "Pickleball Rocks"*

18.   All About Pickleball, LLC, DBA "Pickleball Rocks" is an Indiana Limited Liability Company.

19.   Rocks was formed on July 24, 2013, after Grubbs filed its Articles of Organization with the Office of the Indiana Secretary of State, Business Services Division. *Exhibit 5.*

20.   On May 8, 2023, Grubbs filed a Business Entity Report with the BSD, which lists him as Rocks' CEO. *Exhibit 25.*

21.   Rocks also employs other members of the Grubbs' family, including Zachary Grubbs, Josh Grubbs, and Abby Grubbs. *Exhibit 7 at 1.*

22.   Rocks has sold its pickleball apparel and equipment pickleball tournaments nationwide for several years.

23.   Rocks is also an online retailer of pickleball apparel and equipment.

24.   The website domain addresses "www.helpingpickleballgrow.com"; "www.pickleballrocks.com"; and "www.pickleballshopping.com" are all affiliated with Rocks and redirect to the same retail website. *Exhibit 26* at 3.

25.   Additionally, respondents maintain "www.pickleballchristmas.com"; "www.pickleballshopping.com"; "www.pickleballvideos.net"; "www.whatispickleball.com"; "www.pickleballchampionsclub.com"; "www.pickleballclubwear.com"; "www.nominateaplayer.com"; "www.nominateafacility.com"; "www.nominateaclub.com"; "www.pickleballmile.com"; "www.pickleballfoundation.com"; "www.pickleballrules.com"; and "www.pickleball.com". *Id.*

26.   According to its Privacy Policy posted online, "**Pickleball Rocks is a registered trademark** owned by Your Business IGNITED, LLC, a Grubbs family company which also owns All About Pickleball, LLC." (Emphasis maintained). *Exhibit 27* at 1.

27.   Around November 2022, Rocks opened a retail store at 110 Main Street, Brookville, Indiana, 47012.

28.   The retail store's contact information, location, and hours are omitted from Rocks' website(s), aside from a blog post from November 16, 2022. *Exhibit 28.*

29.     Rocks maintains a principal office address of 316 East 11th Street, Brookville, Indiana
        47012.  *Exhibit 25*.

## IV.    FACTS

*Respondents Are Neither Registered Nor Exempt*

30.     Rocks sells pickleball apparel and equipment.

31.     Rocks sells its products: 1) at pickleball tournaments, 2) online, and 3) at its retail
        storefront.

32.     Grubbs has offered and sold securities in Rocks.

33.     Grubbs has not registered with the Division in any capacity.

34.     Rocks has not registered with the Division in any capacity.

35.     Respondents have not filed a Form D with the Securities and Exchange Commission
        for a federally covered offering.

36.     Respondents have not claimed a state exemption from registration.

*Respondents' Ongoing Offer of Promissory Notes*

37.     Since no later than January 2013, Rocks has issued at least one (1) "Pickleball Rocks
        Domination Plan" ("Domination Plan"), which is "Updated: Constantly!," and
        "Proprietary and Confidential."  *Exhibit 26*.

38.     The eighty-nine (89) page Domination Plan issued in 2022 pitches different
        pickleball-related business opportunities with respect to social media, tournaments,
        brand expansion, shirt ideas, marketing, targeting educational institutions, etc.  *Id*.

39.     The Domination Plan also proposes international expansion with "Pickleball Rocks
        Japan," "Pickleball Rocks India," "Pickleball Rocks Europe," and "Pickleball Rocks
        Canada."  *Id*. at 37.

40.     The Domination Plan has been provided to investors as part of respondents'
        solicitation efforts.

41.     Grubbs has told prospective investors that up until 2020, Rocks' "apparel was being
        sold at 4-5 tournaments somewhere in the country every weekend."  *Exhibit 6* at 2.

42.     Grubbs has also told investors that Rocks suffered significant losses around 2020
        even though "a million new players" began playing pickleball during the pandemic.
        *Id*.; *Exhibit 29* at 2.

43. According to Grubbs, "To those new people, buying clothing was not a necessity" but "the paddle companies had record sales." *Exhibits 6* at 3 and *29* at 2.

44. In turn, Grubbs told several investors that Rocks aimed to purchase large quantities of "low cost paddles," "obsolete or overstocked low-end paddles," and "banned paddles" for resale to clients including "schools and colleges." *Exhibit 6* at 4.

45. Grubbs also told several investors that Rocks needed to buy more pickleball equipment inventory and that their investments would be used for that limited purpose.

46. As part of their solicitation efforts, respondents have issued and distributed an "All About Pickleball, LLC Proprietary and Confidential" document ("Memo"). *Exhibit 7.*

47. The same Memo has been provided to several different investors.

48. The Memo states that respondents "made the decision to begin growing [their] inventory by raising $150,000 [in] seed capital" provided by "4 close pickleball families[2]." *Id.* at 4.

49. The Memo also states that the initial one-hundred-fifty-thousand dollars ($150,000.00) was provided through six (6) separate twenty-five-thousand dollar ($25,000.00) investments. *Id.*

50. Respondents "agreed to pay [investors] a 12% APR with monthly compounded interest on these 25K *loans[3]* for 18 months at a time." (Emphasis added). *Id.*

51. According to the Memo, these investors "generally take interest checks every 18 months or they choose to roll their interest and principal together to grow for another 18 months" instead of seeking full repayment on their promissory notes. *Id.*

52. However, the Memo states that one investor prominent in the pickleball community ("prominent investor") "decided to cash out [their] slot," their "payoff has already been wired to [them]," and that former investor "would be happy to talk to anyone considering taking [their] s[l]ot." *Id.*

---

[2] Grubbs frequently refers to Rocks as a family company; it also appears that pickleball is a "family affair" for some.
[3] The "loans" are in fact the aforementioned promissory notes.

53.   The Memo further states that when the prominent investor cashed out, the "income was not available" to pay them back and respondents were not "able to support this payout and still have the needed capital to grow." *Id.*

54.   Accordingly, respondents "have a need to replace the 25K slot from this lost investor family" and have been looking for an investor to fill the *one last available slot*. *Id.*

55.   The Memo opines that "[Grubb's] family has a great nine year track record" and that an investment with respondents is "a very safe bet." *Id.*

56.   The same Memo has been provided to several investors, each of whom have been told they can fill the *one last available slot*.

57.   Furthermore, respondents have urged prospective investors to not discuss this exclusive investment opportunity with anyone else.

58.   In at least one instance, Grubbs stressed the limited window for investment, telling an investor "**We will need to raise this money by mid next week**." (Emphasis maintained). *Exhibit 6* at 4.

*Respondents' Ongoing Sale of Promissory Notes*

59.   Respondents have continued to sell promissory notes in Rocks, including a PPN dated October 19, 2023. *Exhibit 30*.

60.   Respondents have sold promissory notes to investors with 1) their *one last available slot* pitch described in the Memo, and/or 2) their pickleball equipment inventory purchase pitch.

61.   Respondents have obtained investment from several investors through the aforementioned scheme although they have failed to fully repay on any of the related promissory notes.

62.   Respondents have issued unregistered and nonexempt promissory notes totaling no less than four-hundred-ten-thousand-seven-hundred-twenty-five-dollars and sixty cents ($410,725.60).

*Investor H.W.*

63.   Investor H.W. resides in Illinois.

64.   H.W. met Grubbs through the pickleball community.

65.   H.W. invested twenty-five-thousand dollars ($25,000.00) from their retirement account into Rocks through Equity Trust Company ("ETC").

66.     H.W. was provided with a "Promissory Note" ("PN") dated January 29, 2020, but notarized January 27, 2020, in Franklin County, Indiana, wherein H.W. invested twenty-five-thousand dollars ($25,000.00) at twelve percent (12%) interest[4], with repayment "in one lump sum, on or before July 29, 2020." *Exhibit 8* at 5.

67.     H.W. was also provided with a "Promissory Note DOI" from ETC, reflecting that H.W. would be repaid "one lump sum" of twenty-nine-thousand-nine-hundred-three dollars and sixty-nine cents ($29,903.69) on July 29, 2021, a full year later than what the PN reflects. *Exhibit 8* at 1.

68.     Subsequently, H.W. was provided with a "Desk of Rodney Grubbs," letter dated September 19, 2022, which states that "Your IRA rate remains locked at 12% for another 18 months." *Exhibit 31*.

69.     H.W. was later provided with a separate "Promissory Note AMENDMENT" dated January 29, 2023, but notarized June 20, 2023, in Franklin County, Indiana, which states "**NEW: Due Date of Promissory Note will be <u>July 29, 2024</u>.  Current value of this note is <u>$35,769.22</u> <u>All other terms remain the same</u>.**" *Exhibit 32*.

*Investor S.G.*

70.     Investor S.G. resides in Indiana.

71.     S.G. met Grubbs through the pickleball community.

72.     Grubbs offered S.G. the opportunity to invest in Rocks.

73.     On May 21, 2018, Grubbs emailed S.G. that "I will give you a heads up now.  Every fall we need a 25-30K loan for 6-8 months.  It is used to substantially increase our inventory . . . The loan pays a 14% APR while we have it." *Exhibit 33* at 1.

74.     At the time S.G. declined to invest due to financial uncertainty.

75.     About three (3) years later, S.G. reached out to Grubbs about investing.

76.     Grubbs meet with S.G. and discussed the Domination Plan. *Exhibit 26*.

77.     Grubbs told S.G. that an investment with Rocks was "private," so taxes would not need to be paid on the interest.

78.     On March 3, 2021, S.G. invested twenty-five-thousand dollars into Rocks.

79.     S.G. was provided with a PPN dated March 3, 2021, but notarized April 15, 2021, wherein S.G. invested twenty-five-thousand dollars ($25,000.00) at "**$500 or 12%**

---

[4] Unlike later investments, the interest on this Promissory Note was not compounded.

**(Twelve Percent) APR interest** . . . **compounded monthly**" with repayment "in one lump sum, on or before **9/3/2022**." (Emphasis maintained). *Exhibit 34*.

80. S.G. was subsequently provided with a PPN dated March 3, 2022, but notarized June 6, 2022, wherein S.G. invested twenty-nine-thousand-eighteen dollars and eighty-six cents ($29,018.86) at "**$500 or 12% (Twelve Percent) APR interest** . . . **compounded monthly**" with repayment "in one lump sum, on or before **3/3/2023**." (Emphasis maintained). *Exhibit 35*.

81. Grubbs told S.G. that this latter PPN was "rolled over" from her first PPN, even though S.G.'s initial PPN had not yet matured.

82. On June 27, 2022, S.G. made a final investment of twenty-five-thousand dollars ($25,000.00) into Rocks.

83. S.G. was provided with a PPN dated June 27, 2022, but notarized July 11, 2022, wherein S.G. invested twenty-five-thousand dollars ($25,000.00) at "**$12% (Twelve Percent) APR interest** . . . **compounded monthly**" with repayment "in one lump sum, on or before **12/27/2023**." (Emphasis maintained). *Exhibit 36*.

84. S.G. had previously told Grubbs that they intended to "roll over" their investments for a span of ten (10) years.

85. However, after developing concerns about Rocks, they have since sought repayment.

86. To date, S.G. has not been repaid on either of their investments.

*Investor W.H.*

87. Investor W.H. resides in Florida.

88. Around Spring 2021, W.H. met Grubbs at a pickleball tournament.

89. At that tournament, Grubbs offered W.H. the opportunity to invest in Rocks so it could make pickleball equipment inventory purchases.

90. Sometime in October 2021, W.H. invested twenty-five-thousand dollars ($25,000.00) in Rocks.

91. Grubbs told W.H. that W.H. was taking the aforementioned prominent investor's slot.

92. W.H. was provided with a promissory note that was due for repayment sometime in April 2023.

93. On August 18, 2022, Grubbs emailed W.H. "it is important right now that we raise some additional capital . . . if you know of anybody that might be a good candidate,

please let me know.  Buying these initial paddles and getting them sold is critical to us getting our new equipment side of the business off the ground." *Exhibit 6* at 1.

94. W.H. did not invest additional money into Rocks.

95. When April 2023 came around, Grubbs failed to repay W.H.

96. However, on or about September 23, 2023, Grubbs sent W.H. a check for ten-thousand dollars ($10,000.00).  *Exhibit 37* at 4.

97. W.H. deposited the check, which cleared.

98. On November 2, 2023, W.H. emailed Grubbs and requested another check for ten-thousand dollars ($10,000.00).  *Id.* at 3.

99. On November 30, 2023, Grubbs told W.H. that he "may be able to get a $10,000 check to you this coming week . . . *I [have] got to make a little bit more money yet* but should be able to make the final payoff by that December 31 date for you." (Emphasis added).  *Id.* at 2.

100. W.H. received another check from Grubbs although W.H.'s bank warned them not to deposit the check for "moderate risk" of insufficient funds.  *Id.* at 1.

101. On December 12, 2023, and December 13, 2023, W.H. asked Grubbs to wire them the outstanding balance on their promissory note.  *Id.*

102. W.H. received no response from Grubbs nor did they receive additional funds.

*Investor A.B.*

103. Investor A.B. resides in Indiana.

104. A.B. learned of Grubbs through the pickleball community.

105. A.B. was approached by Grubbs around April 2021.

106. Grubbs offered A.B. the opportunity to invest in Rocks.

107. Grubbs told A.B. that one of six (6) limited slots for investment had opened up and that he was seeking twenty-five-thousand dollars ($25,000.00) for Rocks.

108. Grubbs promised A.B. a twelve percent (12%) return on investment.

109. Grubbs told A.B. that their funds would only be used to purchase inventory.

110. Around May 2022, A.B. invested twenty-five-thousand dollars ($25,000.00) in Rocks.

111. Grubbs told A.B. they would be repaid by November 24, 2023.

112. Grubbs failed to repay A.B. by November 24, 2023.

113. No later than December 2023, A.B.'s partner M.B. began reaching out to Grubbs about repayment.

114. To date, A.B. has not been repaid.

*Investor B.L.*

115. Investor B.L. resides in Indiana.

116. B.L. learned of Grubbs through the pickleball community.

117. After some casual conversations with B.L., Grubbs offered B.L. the opportunity to invest in Rocks.

118. Grubbs provided B.L. with a copy of the Domination Plan. *Exhibit 26*.

119. Grubbs told B.L. that their investment would be used to purchase more inventory so Rocks could sell pickleball equipment to schools.

120. Grubbs also told B.L. that they could be prematurely repaid their investment should an emergency situation arise.

121. Thereafter, B.L. invested twenty-five-thousand dollars ($25,000.00) into Rocks.

122. B.L. was provided with a "Promissory Note (1)" ("PN1") dated May 4, 2022, but notarized May 3, 2022, wherein B.L. invested twenty-five-thousand dollars ($25,000.00) at "**Twelve Percent (12%) APR . . . compounded monthly" with** repayment "in one lump sum, made on or before November 4, 2023." (Emphasis maintained). *Exhibit 38*.

123. B.L. also entered into a separate "Promissory Note (2)" ("PN2") for twenty-five-thousand dollars ($25,000.00), with the same underlying terms as the PN1. *Exhibit 39*.

124. Like the PN1, the PN2 is dated May 4, 2022, but notarized May 3, 2022.

125. B.L. later invested another twenty-five-thousand dollars ($25,000.00) into Rocks.

126. B.L. was provided with a *second* PN2 dated August 11, 2022, but notarized August 10, 2022, wherein B.L. invested twenty-five-thousand dollars ($25,000.00) at "**Twelve Percent (12%) APR . . . compounded monthly**" with repayment "in one lump sum, made on or before February 11, 2024." (Emphasis maintained). *Exhibit 40*.

127. B.L. eventually made a fourth and final investment for twenty-five-thousand dollars ($25,000.00).

128.　B.L. was provided with a "Promissory Note" dated August 23, 2022, but notarized August 22, 2022, wherein B.L. invested twenty-five-thousand dollars ($25,000.00) at "**Twelve Percent (12%) APR** . . . **compounded monthly**" with repayment "in one lump sum, made on or before February 23, 2024." (Emphasis maintained). *Exhibit 41.*

129.　Despite having invested one-hundred-thousand dollars ($100,000.00), Grubbs continued to seek more investment from B.L.

130.　Grubbs told B.L. that there was an opportunity for Rocks to sell a large number of paddles to schools, but he needed more money to buy those paddles.

131.　However, B.L. declined to invest more into Rocks.

132.　When repayment on B.L.'s first two (2) investments came due, B.L. reached out to Grubbs by phone and email.

133.　Grubbs eventually responded by phone.

134.　Grubbs told B.L. that he would be unable to repay B.L. on their PN1 and first PN2.

135.　However, Grubbs told B.L. that he would meet with them and other investors to discuss shared concerns about repayment.

136.　Grubbs later cancelled the meeting and told B.L. that his lawyer advised against him meeting with investors.

137.　To date, B.L. has not been paid back on their investments.

*Investors J.B. and B.B.*

138.　Investors J.B. and B.B. reside in Indiana.

139.　J.B. and B.B. learned of Grubbs through their child, who is involved in the pickleball community.

140.　Grubbs met J.B. and B.B. for lunch and discussed the opportunity to invest in Rocks at twelve percent (12%) interest, compounded monthly, over an eighteen (18) month term.

141.　Grubbs also discussed Rocks' plan to make a high-profile hire and sell pickleball equipment to schools and colleges nationally.

142.　Grubbs told J.B. and B.B. that any investment would not need to be reported to the Internal Revenue Service ("IRS").

143.    Grubbs also told J.B. and B.B. that Rocks doesn't report such investments to the IRS either.

144.    Grubbs told J.B. and B.B. that they could request their money back before the end of the eighteen (18) month term should "extenuating circumstances" arise.

145.    Thereafter, J.B. and B.B invested twenty-five-thousand dollars ($25,000.00) into Rocks.

146.    J.B. and B.B. were provided with a "Personal Promissory Note" ("PPN") dated May 24, 2022, but notarized May 20, 2022, wherein J.B. and B.B. invested twenty-five-thousand dollars ($25,000.000) at "**12% (Twelve Percent) APR interest** . . . **compounded monthly**" with repayment "in one lump sum, on or before **11/24/2023**." (Emphasis maintained). *Exhibit 42.*

147.    After investing, J.B. and B.B. began to have concerns about their investment and asked Grubbs to be repaid several times before their PPN matured.

148.    Respondents did not repay J.B. or B.B. before maturity of their PPN.

149.    Grubbs later told J.B. and B.B. that Rocks had the opportunity to sell pickleball equipment to schools for a good return.

150.    Thereafter, J.B. and B.B. invested an additional fifteen-thousand dollars ($15,000.00).

151.    J.B. and B.B. were provided with a second PPN, dated and notarized August 16, 2023, wherein J.B. and B.B. invested fifteen-thousand dollars ($15,000.00) "plus an additional transaction fee of $1500," with "Principal and fee[5]" to be repaid "in one lump sum, on or before **02/16/2024**." (Emphasis maintained.) *Exhibit 43.*

152.    After repayment on J.B. and B.B.'s first PPN became due, J.B. started contacting Grubbs about when they would be repaid.

153.    Grubbs provided some excuses for the non-payment before he eventually stopped responding.

*Investors T.H. and J.H.*

154.    Investors T.H. and J.H. reside in Indiana.

155.    Grubbs solicited investment from T.H. and J.H.

156.    T.H. had been selling pickleball paddles provided by Grubb's son (Zachary).

157.    Thereafter, Grubbs offered T.H. the opportunity to invest in Rocks.

---

[5] Unlike J.B. and B.B.'s first PPN, no interest rate was specified.

158. Grubbs provided investors T.H. and J.H. with a copy of the Memo. *Exhibit 7*.

159. Grubbs also stated that he would appreciate investors T.H. and J.H. "keeping [the Memo] very private, since we don't want the general public to know how and why we have been able to grow so successfully." *Exhibit 44* at 2.

160. Grubbs emphasized the exclusivity of the investment opportunity, stating that "We have paid a locked 12% annual return to our investor friends for 9 years, so it is rare that anyone pulls out and leaves an available slot." *Id.* at 1.

161. Thereafter, T.H. and J.H. invested thirty-thousand-fifty-two dollars and sixty-nine cents ($30,052.69) into Rocks.

162. T.H. and J.H. were provided with a PPN dated July 7, 2023, but notarized August 29, 2023, wherein T.H. and J.H. invested thirty-thousand-fifty-two dollars and sixty-nine cents ($30,052.69) at "**12% APR interest** . . . **compounded monthly**" with repayment "in one lump sum, made on or before 1/7/2025." (Emphasis maintained). *Exhibit 45*.

163. T.H. and J.H. later invested another twenty-nine-thousand-nine-hundred-three dollars and sixty-nine cents ($29,903.69) into Rocks.

164. T.H. and J.H. were provided with a PPN dated October 19, 2023, but notarized January 16, 2023, wherein T.H. and J.H. invested twenty-nine-thousand-nine-hundred-three dollars and sixty-nine cents ($29,903.69) at "**12% APR interest** . . . **compounded monthly**" with repayment in "one lump sum, made on or before **4/19/2025**." (Emphasis maintained). *Exhibit 31*.

*Investor K.H.*

165. Investor K.H. resides in Indiana.

166. K.H. met Grubbs at a pickleball tournament around June 2022.

167. After some casual conversations, Grubbs offered K.H. the opportunity to invest in Rocks at twelve-percent (12%) interest.

168. Grubbs told K.H. that there were only a couple opportunities left to invest in Rocks.

169. Grubbs also told K.H. that they should not discuss this investment opportunity with anyone else.

170. Grubbs provided K.H. with a copy of the Domination Plan. *Exhibit 26.*

171. Thereafter, K.H. invested fifty-thousand dollars ($50,000.00) into Rocks and was provided with two (2) separate twenty-five-thousand dollar ($25,000.00) promissory notes.

172. Both of K.H.'s promissory notes were due for repayment by January 1, 2024.

173. To date, K.H. has not been repaid.

### V.  VIOLATIONS OF THE INDIANA UNIFORM SECURITIES ACT
#### Counts 1- 5: I.C. § 23-19-5-1:
#### Securities Fraud

174. This section incorporates by reference all preceding sections and paragraphs.

175. Pursuant to I.C. § 23-19-5-1:

> "It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:
>
> (1)  to employ a device, scheme, or artifice to defraud;
>
> (2)  to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading; or
>
> (3)  to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person."

176. By soliciting multiple investors with a Memo that implies each investor can take the same *one last available slot* in a limited investment opportunity, respondents violated I.C. § 23-19-5-1.

177. By urging multiple investors provided with the same Memo not to discuss their investment in Rocks with others, respondents violated I.C. § 23-19-5-1.

178. By issuing a Memo that explains respondents need more investment so they can pay back prior investors, respondents violated I.C. § 23-19-5-1.

179. By failing to pay back investors their principal and interest on matured promissory notes while continuing to seek new investment, respondents violated I.C. § 23-19-5-1.

180. By soliciting multiple investors with the promise their funds would be used exclusively for inventory purchases, respondents violated I.C. § 23-19-5-1.

## Counts 6- 22: I.C. § 23-19-3-1

## Offer or Sale of Unregistered and Nonexempt Securities

181.   This section incorporates by reference all preceding sections and paragraphs.

182.   Pursuant to I.C. § 23-19-3-1:

"It is unlawful for a person to offer or sell a security in this state unless:

(1) the security is a federal covered security;

(2) the security, transaction, or offer is exempted from registration under IC 23-19-2-1 through IC 23-19-2-3; or

(3) the security is registered under this article."

183.   By selling an unregistered and nonexempt promissory note to investor H.W. on or about January 29, 2020, respondents violated I.C. § 23-19-3-1.

184.   By selling an unregistered and nonexempt promissory note to investor S.G. on or about March 3, 2021, respondents violated I.C. § 23-19-3-1.

185.   By selling an unregistered and nonexempt promissory note to investor W.H. during or around October 2021, respondents violated I.C. § 23-19-3-1.

186.   By selling an unregistered and nonexempt promissory note to investor S.G. on or about March 3, 2022[6], respondents violated I.C. § 23-19-3-1.

187.   By selling an unregistered and nonexempt promissory note to investor A.B. during or around May 2022, respondents violated I.C. § 23-19-3-1.

188.   By selling an unregistered and nonexempt promissory note to investor B.L. on or about May 4, 2022, respondents violated I.C. § 23-19-3-1.

189.   By selling another unregistered and nonexempt promissory note to investor B.L. on or about May 4, 2022, respondents violated I.C. § 23-19-3-1.

190.   By selling an unregistered and nonexempt promissory note to investors J.B. and B.B. on or about May 24, 2022, respondents violated I.C. § 23-19-3-1.

191.   By selling an unregistered and nonexempt promissory note to investor S.G. on or about June 27, 2022, respondents violated I.C. § 23-19-3-1.

192.   By selling an unregistered and nonexempt promissory note to investor B.L. or on or about August 11, 2022, respondents violated I.C. § 23-19-3-1.

---

[6] Although Grubbs claimed this was a "roll over" despite the underlying promissory note not having matured, this was effectively a new promissory note.

193.   By selling an unregistered and nonexempt promissory note to investor B.L. on or about August 23, 2022, respondents violated I.C. § 23-19-3-1.

194.   By selling an unregistered and nonexempt promissory note to investor H.W. on or about January 29, 2023[7], respondents violated I.C. § 23-19-3-1.

195.   By selling an unregistered and nonexempt promissory note to investors T.H. and J.H. on or about July 7, 2023, respondents violated I.C. § 23-19-3-1.

196.   By selling an unregistered and nonexempt promissory note to investors J.B. and B.B. on or about August 16, 2023, respondents violated I.C. § 23-19-3-1.

197.   By selling an unregistered and nonexempt promissory note to investors T.H. and J.H. on or about October 19, 2023, respondents violated I.C. § 23-19-3-1.

198.   By selling an unregistered and nonexempt promissory note to investor K.H. prior to January 1, 2024, respondents violated I.C. § 23-19-3-1.

199.   By selling another unregistered and nonexempt promissory note to investor K.H. prior to January 1, 2024, respondents violated I.C. § 23-19-3-1.

## VI.    RELIEF REQUESTED

Wherefore, the Division respectfully requests that the Commissioner take the following actions:

a.   Find that respondents violated the IUSA, pursuant to I.C. § 23-19-6-2(a)(1);

b.   Order respondents to cease and desist from the offer and sale of securities, pursuant to I.C. § 23-19-6-4(a)(1);

c.   Order respondents to stop engaging in any acts or conduct that violate the IUSA, Rules, and the Commissioner's Administrative Orders, pursuant to I.C. § 23-19-6-4(a)(1);

d.   Impose a civil penalty in an amount not to exceed ten-thousand dollars ($10,000.00) for each violation committed by respondents, pursuant to I.C. § 23-19-6-4(d);

e.   Order respondents to pay the costs of investigation of this matter, pursuant to I.C. § 23-19-6-4(e);

f.   Find that all the sanctions and remedies detailed herein are in the public interest and necessary for the protection of Indiana investors, pursuant to I.C. § 23-19-6-4; and

g.   Grant such other and further relief, as the Commissioner deems appropriate, pursuant to I.C. § 23-19-6-4.

---

[7] Although the note reads "AMENDMENT" this was effectively a new promissory note.

Respectfully submitted,

OFFICE OF THE INDIANA

SECRETARY OF STATE,

SECURITIES DIVISION

By: _____

Scott A. Probert, #36934-49

Enforcement Attorney

302 W. Washington St., Room E-111

Indianapolis, IN 46204

317-232-8651

SProbert1@sos.in.gov

STATE OF INDIANA      )                           FRANKLIN CIRCUIT COURT
                           ) SS:
COUNTY OF FRANKLIN   )                           CAUSE NO. 24C01-2311-CT-000631

PHILIP PICHE,                    )
                                   )
            Plaintiff,         )
                                   )
      v.                    )
                                   )
RODNEY GRUBBS,              )
                                 )
           Defendant.     )

**FILED**

January 22, 2024

*J. Steven Cox*

Judge Franklin Circuit Court

## ORDER AND ENTRY OF DEFAULT JUDGMENT

The Court, having received and considered Plaintiff's "Verified Motion for Default Judgment," and being duly and fully advised, now **FINDS** and **ORDERS** as follows:

1.      Plaintiff filed his "Complaint" in this cause on November 16, 2023.

2.      Defendant Rodney Grubbs was served with the Complaint and accompanying Summons on December 22, 2023. As shown by the "Return of Service" filed January 2, 2024, the Summons and Complaint were delivered by the Franklin County Sheriff to Defendant's home address of 316 East 11th Street, Brookville IN 47012.

3.      Defendant has failed to appear in this action and has not answered or otherwise responded to the Complaint within 23 days of being served.

4.      Defendant is not subject the Servicemembers Civil Relief Act.

5.      Defendant is not a minor or an infant and is not incompetent.

6.      By failing to appear or answer or otherwise respond, Defendant is deemed to have admitted all the factual allegations of the Complaint, including that he owes Plaintiff $1,265,744.16 in damages, not including prejudgment interest.

7.      The facts of the Complaint, which are incorporated and adopted as though restated herein, show that Plaintiff is entitled to the relief requested on all counts and claims. Plaintiff's relief includes treble damages under the Indiana Crime Relief Victims Act, Ind. Code § 34-24-3-1, which total **$3,797,232.48**. Plaintiffs' relief also includes attorney's fees of **$2000** and recoverable costs of **$270.51**, the amounts of which were established by the "Affidavit in Support of Attorney's Fees and Costs" tendered concurrently with the "Verified Motion for Default Judgment."

8.      The Court, in its discretion, further holds that Defendant shall pay prejudgment interest at a rate of 10%, totaling **$122,759.85**, on the amount he owed to Plaintiff as of February 1, 2023. A rate of 10% is within the Court's statutory discretion and is justified by Defendant's deemed admitted fraudulent and criminal conduct toward Plaintiffs.

**WHEREFORE**, the Court orders and enters judgment as follows:

A.      Plaintiff's Verified Motion for Default Judgment is **GRANTED**.

B.      Judgment is **ENTERED** for Plaintiff and against Defendant on each and all counts and claims in the Complaint, namely Count I (breach of contract/promissory note), Count II (fraud), Count III (constructive fraud), Count IV (conversion), Count V (theft), and Count VI (replevin).

C.      Plaintiff is awarded, and Defendant is ordered to pay Plaintiff, $3,797,232.48 in damages, $2000 in attorney's fees, $270.51 in costs, and prejudgment interest of $122,759.85, for a total judgment award of **$3,922,262.84**.

Dated:  **January 22, 2024**

*J. Steven Cox*

J. Steven Cox, Judge [JH]
Franklin Circuit Court

Distribution via the Court's ECF system

2

STATE OF INDIANA        )           IN THE FRANKLIN CIRCUIT COURT

                     ) SS:

COUNTY OF FRANKLIN     )           CAUSE NO. 24C02-2307-CC-000400

LARRY and DEBBIE PECK,       )

                     )

     Plaintiffs,                )

                     )

     v.                    )

                     )

RODNEY GRUBBS,           )

                     )

     Defendant.             )

**FILED**

January 17, 2024

*Clay M. Kellerman*

Judge Franklin Circuit Court

## AMENDED ORDER AND ENTRY OF DEFAULT JUDGMENT

The Court, having received and considered Plaintiffs' "Motion for Default Judgment" and their January 7, 2023 "Motion to Amend Default Judgment to Include Award for Damages, Costs, and Attorney's Fees" (the "Motion to Amend"), and being duly and fully advised, now **FINDS** and **ORDERS** as follows:

1. Plaintiffs filed their "Complaint" in this cause on July 31, 2023.

2. Defendant was served with the Complaint and its accompanying Summons on October 9, 2023. (See Plaintiff's October 10, 2023 "Affidavit of Service.") Service was perfected in person by Plaintiffs' counsel, who handed the Complaint and Summons directly to Defendant on the front porch of his home at 316 East 11th Street, Brookville IN 47012.

3. Plaintiffs filed their "Amended Complaint" on November 6, 2023. Service of the Amended Complaint on Defendant was perfected the same date, being completed by first-class, prepaid U.S. mail sent to Defendant's established home and mailing address of 316 East 11th Street, Brookville IN 47012.

4. Defendant has failed to appear in this action and has not answered or otherwise

responded to the Complaint or the Amended Complaint within 23 days of being served.

5.       Defendant is not a minor or an infant and is not incompetent.

6.       Defendant is not subject to the Servicemembers Civil Relief Act.

7.       By failing to appear or answer or otherwise respond, Defendant is deemed to have admitted all the factual allegations of the Amended Complaint, including that he owes Plaintiffs $559,000.91, not including prejudgment interest.

8.       The facts of the Amended Complaint are incorporated and adopted as though fully restated herein and support the entry of judgment for Plaintiffs on all counts and claims.

9.       The facts of the Amended Complaint demonstrate that Plaintiffs are entitled to the relief requested on all counts and claims therein. Plaintiffs' relief includes treble damages under the Indiana Crime Relief Victims Act, Ind. Code § 34-24-3-1, which total $1,677,002.73. Plaintiffs' relief also includes attorney's fees of $1500 and recoverable costs of $193.08, the amounts and payment of which Plaintiffs established through their Motion to Amend and its exhibit.

10.       The Court, in its discretion, further holds that Defendant shall pay prejudgment interest at a rate of 10%, totaling $74,898.29, on the amount he owed to Plaintiffs as of August 18, 2022. A rate of 10% is within the Court's statutory discretion and is justified by Defendant's deemed admitted fraudulent and criminal conduct toward Plaintiffs.

      **WHEREFORE**, the Court orders and enters judgment as follows:

A.       Plaintiffs' Motion for Default Judgment is **GRANTED**.

B.       Judgment is **ENTERED** for Plaintiffs and against Defendant on each and all counts and claims in the Amended Complaint, namely Count I (breach of contract/promissory note), Count II (fraud), Count III (constructive fraud), Count IV (conversion), Count V (theft), and Count VI (replevin).

C.      Plaintiffs are awarded, and Defendant is ordered to pay Plaintiffs,
        $1,677,002.73 in damages, $1500 in attorney's fees, $193.08 in costs, and
        prejudgment interest of $74,898.29, for a total judgment award of
        **$1,753.594.10**.

Dated: _____1-16-24_____            _____
                                    Franklin Circuit Court No. 2

**Distribution via the Court's ECF system**

STATE OF INDIANA        )
                                 )    SS: IN THE FRANKLIN CIRCUIT COURT 2
COUNTY OF FRANKLIN     )

JUSTIN MASTERSON and MERYL       )
MASTERSON,                           )
                                 )
      Plaintiffs,                 )
                                 )
v.                                     )     CAUSE NO. 24C02-2310-PL-000565
                                 )
RODNEY GRUBBS,            )
                                 )
      Defendant.             )

**FILED**
November 27, 2023

*Clay M. Kellerman*
Judge Franklin Circuit Court

## **ENTRY OF DEFAULT JUDGMENT**

       The Court, having read and reviewed Plaintiffs Justin and Meryl Masterson's Motion for Entry of Default Judgment and being otherwise duly advised in the premises, finds that said Motion should be and the same is hereby GRANTED.

       IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiffs Justin and Meryl Masterson shall have a judgment from and against Defendant Rodney Grubbs in the amount of $4,968,887.88, plus costs in the amount of $232.00, plus attorney fees and expenses as of November 17, 2023 in the amount of $5,098.00, plus any attorney fees incurred after November 17, 2023, plus post-judgment interest at the statutory rate of eight percent (8%) per annum.

Dated:   __November 27__ , 2023

*Clay M. Kellerman*
Judge, Franklin Circuit Court

**Distributed to counsel via the e-filing system.**

**Distributed to via US mail:**

RODNEY GRUBBS
316 EAST 11TH STREET
BROOKVILLE, IN 47012