dotloop signature verification:

Copyright October 1, 2021                                                                                                               Page 1 of 10


**COLDWELL BANKER HERITAGE**

## Contract to Purchase
Adopted by the
CINCINNATI AREA BOARD OF REALTORS®
DAYTON REALTORS®
For exclusive use by REALTORS®.
This is a legally binding contract. If not understood, seek legal advice.
For real estate advice, consult a REALTOR®.



05/02/2024 _____ (date).

1. **PROPERTY DESCRIPTION:** I/We ("Buyer") offer to purchase from Seller ("Seller") the following described property:
Address **426 Fountain Ave** _____ City/Township **Dayton** _____,
Ohio, Zip Code **45405** ____, County **Montgomery** _____, Further described as: (include county Auditor's Parcel Number(s) for each and every parcel included in sale)
**31045 PT & VAC ALY  AKA  R72-06911-0019** _____ ("Real Estate").

2. **TIMELINES:** All timelines and deadlines under this Contract shall be strictly construed. Time is of the essence with regard to any and all timelines. Contract performance dates and contingencies in the Contract shall commence the day following Contract Acceptance Date.

3. **PRICE AND TERMS:** Buyer hereby agrees to pay $**75,000** _____ ("Purchase Price") for the Real Estate, payable as follows:

a) **EARNEST MONEY CONTINGENCY:** This contract is contingent upon Buyer providing earnest money in the amount of $**500.00** _____ ("Earnest Money"). Earnest Money shall be submitted for deposit with **Coldwell Banker Heritage** ____*, and written acknowledgement of Earnest Money deposit shall be provided to Listing REALTOR® or Seller within **3** calendar days (this shall be 3 calendar days if not specified) beginning the day following the Contract Acceptance Date, as hereinafter defined ("Contract"), in a trust account pending the final settlement and conveyance of the purchase and sale of the Real Estate contemplated in this Contract ("Closing"). If written acknowledgment of Earnest Money is not provided within the stated period, then Seller, at any time after the stated period, but prior to receiving the written acknowledgement of deposit, and by Seller's sole option, may, by written notice to selling REALTOR® or Buyer, terminate this Contract. If this Contract terminates for any reason, the Earnest Money will NOT be automatically disbursed to any party.

*(i) In the event that the parties designate an Ohio-licensed real estate broker to hold the Earnest Money: Any disbursement of Earnest Money shall be in compliance with Ohio R.C. 4735.24, which includes the following stipulations: The Earnest Money shall be disbursed as follows: (i) if the transaction is closed, the Earnest Money shall be applied to Purchase Price (may be retained by brokerage and credited toward brokerage commission owed) or as directed by Buyer or (ii) if either party fails or refuses to perform, or if any contingency is not satisfied or waived, the Earnest Money shall be (a) disbursed in accordance with a release of earnest money ("Release") signed by all parties to the Contract or (b) in the event of a dispute between the Seller and Buyer regarding the disbursement of the Earnest Money, the broker is required by law to maintain such funds in his trust account until the broker receives (a) written instructions signed by the parties specifying how the Earnest Money is to be disbursed or (b) a final court order that specifies to whom the Earnest Money is to be awarded. If the Real Estate is located in Ohio, and if within two years from the date the Earnest Money was deposited in the broker's trust account, the parties have not provided the broker with such signed instructions or written notice that such legal action to resolve the dispute has been filed, the broker shall return the Earnest Money to the Buyer with no further notice to the Seller.

*(ii) In the event that the parties do not designate an Ohio-licensed real estate broker, and designate another third-party or the herein listed title company to hold the Earnest Money, the terms and conditions of this escrow hold shall be governed by separate, third-party escrow terms. ☐ Separate escrow terms are attached.

Both Buyer and Seller acknowledge and agree that, in the event of a dispute between Buyer and Seller as to entitlement of the Earnest Money, the REALTORS® will not make a determination as to which party is entitled to the Earnest Money. Buyer and Seller acknowledge that loss of Earnest Money may not be a party's sole remedy for failure to perform on the Contract.

b) **BALANCE:** The balance of the Purchase Price shall be paid by wire transfer, certified, cashier's, official bank, attorney or title company trust account check on date of Closing, subject to the terms of applicable law.

**Settlement Charges:** In addition to costs incurred in order for the Seller to fulfill the terms of the Contract and to provide marketable title, Seller agrees to pay actual settlement charges and/or other fees due at Closing on behalf of the Buyer, including, but not limited to, discount points, closing costs, pre-paids, and any other fees allowed by Buyer's lender in an amount not to exceed $**zero** _____.

4. **FINANCING CONTINGENCY:** Except as otherwise stated and agreed herein, Buyer shall pay any and all fees incurred as a result of Buyer obtaining financing for the purchase. If Buyer's selected financing option includes a Buyer recission period, Buyer shall close on that loan with sufficient time for funds to be available on the Date of Closing of this Contract.

Buyer intends to use the Real Estate for the following purpose: ☐ Owner-occupied  ☒ Rental  ☐ Other: _____.

☒ **CASH:** Buyer's written confirmation of available funds, on verifiable document from funding source, ☒ is attached
☐ shall be provided within _____ calendar days beginning the day following the Contract Acceptance Date. If Buyer fails to provide such documentation, then Seller may, by written notice to selling REALTOR® or Buyer, terminate this Contract.

Buyer's Initials [AV]  [  ]   Date / Time _____   Seller's Initials [✓] [  ]   Date / Time 5/8/2024, 1:00 p.m.

Copyright October 1, 2021        Property Address: 426 Fountain Ave, Dayton, OH 45405        Page 2 of 10

51  ☐ **CONVENTIONAL LOAN:** The Buyer's obligation to close this transaction is contingent upon Buyer applying for and
52  obtaining: (a) ☐ fixed  ☐ adjustable or  ☐ other  first mortgage loan on the Real Estate, (b) in an amount not to exceed
53  _____% of the Purchase Price, (c) at an interest rate ☐ at prevailing rates and terms ☐ not to exceed _____%,
54  (d) for a term of not more than _____ years or at a higher rate or shorter term agreeable to Buyer.

55  ☐ **FHA/USDA/VA:** The Buyer's obligation to close this transaction is contingent upon Buyer applying for and obtaining
56  (a) ☐ FHA, [(1) ☐ fixed or (2) ☐ adjustable] (including FHA closing costs), ☐ USDA or ☐ VA (including VA funding fee)
57  first mortgage loan in the maximum amount not to exceed _____% of the Purchase Price, (b) at an interest rate
58  ☐ at prevailing rates and terms  ☐ not to exceed _____%, (c) for a term of not less than _____ years or
59  at a higher rate or shorter term agreeable to Buyer.  ☐ Buyer has been provided the FHA For Your Protection: Get a Home
60  Inspection disclosure. *When the Buyer is financing through FHA, USDA or VA, the Seller may be required to pay for certain fees.*
61  *Check with Buyer's lending institution. Whole house inspection fees may be paid by the VA Buyer, but must be paid outside of the*
62  *Closing. On FHA/USDA/VA contracts, the appraiser is not deemed to be a whole house inspector.*

63  ☐ **OTHER FUNDING SOURCE:** N/A _____ (funding source) Buyer's written confirmation of
64  available funds, on verifiable document from funding source, ☐ is attached  ☐ shall be provided within _____ calendar
65  days beginning the day following the Contract Acceptance Date. If Buyer fails to provide such documentation, then Seller may,
66  by written notice to selling REALTOR® or Buyer, terminate this Contract.

67  **Financing Timeframe: IF BUYER FAILS TO PROVIDE WRITTEN CONFIRMATION TO SELLER THAT BUYER**
68  **HAS COMPLETED ANY OF THE REQUIREMENTS OF THE FINANCING TIMEFRAME, AS SET FORTH IN**
69  **SUBSECTIONS (a) THROUGH (d) below, THEN SELLER MAY, AT SELLER'S SOLE DISCRETION, BY WRITTEN**
70  **NOTICE TO BUYER, TERMINATE THIS CONTRACT SO LONG AS WRITTEN NOTICE OF TERMINATION IS**
71  **DELIVERED TO BUYER PRIOR TO RECEIPT OF SUCH WRITTEN CONFIRMATION.**

72  (a) Buyer financing qualification letter based upon initial credit check and preliminary information provided by Buyer stating that
73  such qualification ☐ is ☑ is not contingent upon the closing of Buyer's other real estate and ☐ is attached ☐ shall be
74  provided to Seller within _____ calendar days beginning the day following the Contract Acceptance Date.

75  (b) Buyer shall complete a loan application, which shall include providing selected lender with *"intent to proceed"*, including
76  payment for appraisal (if necessary), within N/A _____ calendar days beginning the day following the Contract Acceptance Date
77  and will make a diligent effort to obtain financing. Within such timeframe, Buyer shall provide written notification to Seller
78  naming selected lender and confirming that this provision has been satisfied.

79  (c) Buyer or Buyer's lender shall provide written notification to Seller, that Conditional Approval has been obtained within
80  N/A _____ calendar days beginning the day following the Contract Acceptance Date. Conditional Approval shall mean that the
81  loan has been underwritten with credit, income, debts, and assets (collectively, "Creditworthiness") verified and acceptable to
82  lender, subject only to: material changes of Buyer's Creditworthiness, appraisal, and marketability of title to be obtained prior to
83  final loan approval (clear to close).

84  (d) Buyer or Buyer's lender shall provide written notification to Seller, that loan approval (clear to close) has been obtained or waived
85  within N/A _____ calendar days prior to the Date of Closing in Section 22.

86  Buyer shall make a diligent effort to obtain financing and shall provide all lender-requested documents to the lender in a timely
87  manner. **BUYER IS RELYING ON BUYER'S OWN UNDERSTANDING OF FINANCING TO BE OBTAINED AND**
88  **PROCESSES REQUIRED BY A LENDER AS WELL AS THE LEGAL AND TAX CONSEQUENCES THEREOF, IF ANY.**

89  5. **APPRAISAL CONTINGENCY:** Buyer's obligation to close this transaction is contingent upon Real Estate appraising at or above final
90  sales price of the Real Estate. Buyer has the right to obtain, at Buyer's expense, an independent appraisal performed by an appraiser licensed in Ohio.
91  In the event the Real Estate does not obtain an appraised value (by either Buyer's appraiser in connection with sale funded by cash or Other Funding
92  Source or Lender's appraiser in connection with a financed sale) equal to or greater than the Purchase Price, Buyer shall have the option to terminate
93  this Contract by delivering written notice to Seller (i) in the event of purchase via Cash or Other Funding Source, within _____ calendar days
94  beginning the day following the Contract Acceptance Date, or (ii) in the event of Conventional, FHA, USDA or VA financing, the time-frame set
95  forth in Section 4 above for obtaining a loan approval (such applicable time period being referred to as the "Appraisal Contingency Period"). If Buyer
96  does not deliver written notice to Listing REALTOR® Seller that Buyer is terminating the Contract prior to the expiration of the Appraisal
97  Contingency Period, then Buyer's option to terminate this Contract due to appraised value shall be deemed waived.

98  6. **INCLUSIONS/EXCLUSIONS OF SALE:** The Real Estate shall include the land, together with all buildings, improvements,
99  fixtures, and all items affixed or wired to the Real Estate located thereon (but excluding any items specifically excluded in 6b
100 below), and all appurtenant rights, privileges, easements, fixtures, and all of, but not limited to, the following items if they are
101 now located on the Real Estate and used in connection therewith: electrical; plumbing; heating and air conditioning equipment,
102 including window units; bathroom mirrors and fixtures; shades; blinds; awnings; window rods; window/door screens, storm
103 windows/doors; shrubbery/landscaping; affixed mirrors; affixed floor covering, wall-to-wall, inlaid and stair carpeting (attached
104 or otherwise); fireplace inserts/grates; fireplace screens/glass doors; wood stove; gas logs and starters; television and/or sound
105 system mounting brackets (excluding televisions and/or sound system), aerials/rotor operating boxes/satellite dishes (including
106 non-leased components); affixed humidifiers; water softeners; water purifiers; central vacuum systems and equipment;
107 doorbells/chimes; garage door openers/operating devices; all affixed surveillance, monitoring, security alarm systems/cameras

Buyer's Initials [AT] [ ]    Date / Time _____    Seller's Initials [PP] [ ]    Date / Time 5/8/2024, 1:00 p.m.

Copyright October 1, 2021          Property Address: 426 Fountain Ave, Dayton, OH 45405                    Page 3 of 10

108  and affixed-system operating controls; all affixed furniture/fixtures; utility/storage buildings/structures; inground/above ground
109  swimming pools and equipment; swing sets/play sets; affixed basketball backboard/pole; propane tank/oil tank and contents
110  thereof; electronic underground fencing transmitter and receiver collars, and parking space(s) number(s) _____ and
111  storage unit number _____ (where applicable). The following appliances shall also be included: ranges, ovens,
112  microwaves, refrigerators, dishwashers, garbage disposers, and trash compactors. Notwithstanding the foregoing, any free-
113  standing, countertop appliances shall not be included unless specifically delineated in section 6a), below.  The following items,
114  which are leased in whole or in part, shall be excluded from this sale (please check appropriate boxes): ☐ water softener;
115  ☐ security/alarm system; ☐ propane tank; ☐ satellite dish; ☐ satellite dish components: _____,

116  **6a) THE FOLLOWING ITEMS (WHICH ADD NO ADDITIONAL VALUE TO THE REAL ESTATE) ARE**
117  **SPECIFICALLY INCLUDED WITH THE REAL ESTATE:**
118  COOKTOP, RANGE, REFRIGERATOR
119

120  **6b) THE FOLLOWING ITEMS ARE SPECIFICALLY EXCLUDED FROM THE REAL ESTATE:**
121
122

123  **7. CERTIFICATION OF OWNERSHIP:** Seller certifies that Seller owns all of the items listed in Section 6 and that they will be
124  free and clear of any debt, lien or encumbrances at closing (except as listed in Section 22 of this Contract). Seller also represents that
125  those signing this Contract constitute all of the owners of the title to the real property and other items as listed in Section 6, together with
126  their respective spouses, if applicable. In the event of power of attorney, trust, corporation, limited liability company, inheritance or other
127  right to transfer, documentation of authority to convey the Real Estate shall be provided to the title company upon request.

128  **8. SELLER'S CERTIFICATION:** Seller certifies to Buyer that to the best of Seller's knowledge: The Real Estate:
129  (a) ☐ is  ☒ is not  located in a Historic District.
130  (b) ☐ is  ☒ is not  subject to a lease.
131  (c) ☐ is  ☒ is not  subject to an agreement pertaining to joint maintenance of shared aspects of/by the Real Estate (not covered
132  by HOA). If affirmative, describe: _____.
133  (d) ☐ is  ☒ is not  located in a flood plain requiring insurance.
134  (e) ☐ is  ☒ is not  subject to a municipal pre-sale inspection, disclosure, and/or certification of occupancy; if the Real Estate
135  is located in a jurisdiction requiring housing inspection before transfer, Seller shall be responsible for completing and submitting
136  the necessary application and will furnish to Buyer a copy of the resulting unconditional certificate on or before the date of Closing.
137  (f) ☐ is  ☒ is not  subject to pending orders of any public authority. If affirmative, describe: _____
138  _____.
139  (g) ☐ has  ☒ has not  had work performed or improvement constructed that may result in future assessments. If affirmative,
140  describe: _____.
141  (h) ☐ has  ☒ has not  received notices from a public agency with respect to condemnation or appropriation, change in zoning,
142  proposed future assessments, correction of conditions or other similar matters. If affirmative, describe:
143  _____.
144  (i) ☐ yes  ☒ no  toxic, explosive or other hazardous substances have been stored, disposed of, concealed within or released on
145  or from the Real Estate and/or other adverse environmental conditions exist within the boundaries of the Real Estate. If yes,
146  describe: _____
147  (j) ☐ is  ☒ is not  subject to encroachments, shared driveways, party walls. If affirmative, describe: _____
148  _____.
149  (k) ☐ yes  ☒ no  there are property tax abatements or homestead exemptions currently affecting the Real Estate. If yes, describe:
150  _____.
151  (l) ☐ yes  ☒ no  there have been (site or area) improvements installed or services furnished, and/or Seller has received
152  notification(s) from public authority(ies) or owner's association of future improvements, for which any part of the costs may be
153  assessed against the Real Estate. If affirmative, describe: _____.
154  (m) ☐ is  ☒ is not  owned by any person(s) or entity(ies) subject to Foreign Investments in Real Property Tax Act (FIRPTA).

155  **9. HOMEOWNER ASSOCIATION/CONDOMINIUM DECLARATIONS, BYLAWS AND ARTICLES:** Real Estate
156  (a) ☐ is  ☒ is not  subject to a homeowner association established by recorded declaration with mandatory membership,
157  (b) ☐ is  ☒ is not  subject to currently approved and/or pending homeowner association assessment (separate from HOA fees).
158  If affirmative, please provide amount(s) and describe: _____.
159  (c) ☐ is  ☒ is not  subject to mandatory fees imposed on the real estate [☐ pool, ☐ golf course, ☐ other _____
160  _____] (separate from HOA fees).
161  Seller certifies that the current HOA fees are:  $ N/A            ☐ Monthly   ☐ Quarterly   ☐ Annually and/or
162  ☐ Other _____.
163  Seller further certifies that, to the best of Seller's knowledge, there are no Homeowner Association violations (current or
164  outstanding) affecting the Real Estate except: N/A _____.
165  If the Real Estate is subject to any such items listed above or any other restrictions/regulations known to Seller, Seller will, at
166  Seller's expense, provide Buyer with a current copy of documents affecting the real estate including, but not limited to, documents
167  recorded with the county, the Association Declaration, the Association's financial statements, Rules and Restrictions, schedule of

Buyer's Initials [initialed] [  ]    Date / Time _____    Seller's Initials [initialed] [  ]    Date / Time 5/8/2024, 1:00 p.m.

168  monthly, annual and special assessments/fees, architectural standards (to the extent not included in the Rules and Restrictions), the
169  Bylaws and the Articles of Incorporation, Minutes for the previous 2 years, and other pertinent documents (collectively,
170  "Documents") within N/A calendar days beginning the day following the Contract Acceptance Date ("Document Delivery
171  Period"). Buyer shall have the right to disapprove of the Documents by delivering written notice of Buyer's disapproval to Seller
172  within N/A calendar days beginning the day following the actual delivery date within the Document Delivery Period
173  ("Disapproval Period"). If written notice of disapproval is delivered within the Disapproval Period, then this Contract shall become
174  null and void. Unless written notice is delivered within the Disapproval Period, Buyer shall be deemed to have approved the
175  Documents and waives the right to terminate the Contract based upon the terms and conditions of same. If Seller fails to provide
176  Documents as required, Buyer has the right to terminate the Contract within 3 days of the Document Delivery Period by providing
177  written notice to Seller of such termination. Seller agrees, as a condition to Closing, to secure, at Seller's expense, written approval
178  for this sale if required by the Documents. Seller, at Seller's expense, shall provide any letter of assessment required at Closing
179  by the lender and/or title company. Buyer shall be responsible for, and Seller shall reasonably assist, in obtaining any lender-
180  required documents from the association.

181  Buyer shall pay for all fees for documents required by the lender, including but not be limited to, application fees, association
182  questionnaire fees, appraisal fees, wire transfer fees, etc.

183  At the time of closing, Buyer shall pay for any initial capital infusion or advance dues/assessments required by the association and
184  related to the period of Buyer's ownership. Seller shall pay for any and all dues/assessments required by the association that shall
185  come due and payable prior to the date of Closing and related to the period of Seller's ownership. Any dues/assessments that relate
186  to a period of ownership for both, Buyer and Seller, shall be prorated at Closing. Seller shall also pay for the status letter and
187  account transfer fees (this shall include **any and all** administrative, association and/or management fees incurred as a result of the
188  sale and transfer of the real estate, regardless of how they are characterized by the association, including, but not limited to: new
189  account set-up fees, certification fees, transfer fees, administrative fees, etc.), Seller acknowledges that it is Seller's responsibility
190  to provide association contact information to the title company at least 14 calendar days prior to closing. Failure to do this may
191  result in additional charges to Seller. Any and all expedited service fees charged by the association/management company shall
192  be paid by Seller.

193  **10. MAINTENANCE:** Until physical possession is delivered to the Buyer, Seller shall continue to maintain the Real Estate,
194  including, but not limited to, the grounds and improvements thereon. Seller shall repair or replace any appliances, equipment or
195  systems currently in normal operating condition that fail prior to possession except: No Exceptions                    . Seller
196  further agrees that until physical possession is delivered to the Buyer, the Real Estate will be in as good condition as it is presently,
197  except for normal wear and casualty damage from perils insurable under a standard all risk policy. If, prior to Closing, the Real
198  Estate is damaged or destroyed by fire or other casualty, Buyer shall have the option to (a) proceed with the Closing, or (b) terminate
199  this Contract. While this Contract is pending, Seller shall not change any existing lease or enter into any new lease, nor make any
200  substantial alterations or repairs without the written consent of the Buyer. Buyer and Seller agree that Buyer shall be provided
201  **the opportunity to conduct a walk-through inspection of the Real Estate within 48 hours prior to Closing, solely for the**
202  **purpose of ascertaining that the Seller has maintained the Real Estate as required herein and has met all other contractual**
203  **obligations.** Upon Closing, Buyer shall become responsible for any risk of loss and for insurance for the Real Estate.

204  **11. HOME WARRANTY PROGRAM:** Buyer has been informed that home warranty programs may be available to provide
205  potential additional benefits to Buyer. Buyer ☐ selects ☒ does not select a home warranty to be provided by _____
206  _____ (Home Warranty Company) and paid for by _____ at an
207  amount not to exceed _____.

208  **12. PROPERTY DISCLOSURE FORM:** Buyer ☐ has ☐ has not received the Ohio Residential Property Disclosure form
209  or ☒ Seller represents and warrants that Seller is exempt from providing the Ohio Residential Property Disclosure (Ohio
210  REALTORS® Residential Property Disclosure Exemption Form attached).

211  **13. BUYER'S OFF-SITE ACKNOWLEDGEMENT:** Buyer acknowledges that Buyer has conducted any and all desired
212  investigations that are relevant to Buyer with regard to the municipality, zoning, school district, and legal use of the Real
213  Estate and conditions outside of the boundaries of the Real Estate, including but not limited to, crime statistics, registration
214  of sex offenders, noise levels (i.e., airports, interstates, environmental), availability and requirements and costs for delivery
215  of utilities (water/power/etc.), local regulations/development or any other issues of relevance to the Buyer and has verified
216  that the Real Estate is suitable for Buyer's intended use. Buyer assumes sole responsibility for researching such conditions.
217  Notwithstanding anything to the contrary, Seller makes no representations or warranties with regard to these conditions and the
218  use of the Real Estate. Buyer acknowledges that Buyer has been given the opportunity to conduct research pertaining to any and
219  all of the foregoing prior to execution of this Contract. Buyer is relying solely on Buyer's own research, assessment and inquiry
220  with local agencies and is not relying, and has not relied, on Seller or any REALTOR® involved in this transaction.

221  **14. REAL ESTATE INSPECTION CONTINGENCY: BUYER ACKNOWLEDGES THAT BUYER HAS BEEN**
222  **ADVISED BY REALTOR® TO CONDUCT INSPECTIONS OF THE REAL ESTATE THAT ARE OF CONCERN TO**
223  **BUYER AND HAS BEEN PROVIDED THE OPPORTUNITY TO MAKE THIS CONTRACT CONTINGENT UPON**
224  **THE RESULTS OF SUCH INSPECTION(S).**

225  The Buyer, at **Buyer's** expense, has the option to have the Real Estate inspected by Ohio licensed home inspectors and/or other
226  professionals qualified to perform assessments and services in a specific area of expertise/inspections regarding the physical

Buyer's Initials [initialed] [  ]   Date / Time _____   Seller's Initials [initialed] [  ]   Date / Time 5/8/2024, 1:00 p.m.

227  condition, insurability and cost of a casualty insurance policy(ies), boundaries, and use of the Real Estate shall be the sole
228  responsibility of the Buyer. Buyer is relying solely upon Buyer's examination of the Real Estate (personally or by Buyer's
229  inspectors and/or contractors), the Seller's representations and certifications, including those made herein, under the Ohio
230  Residential Property Disclosure, and under the Lead Based Paint Disclosure, if any. During the Inspection Period, Buyer
231  and Buyer's inspectors and contractors shall be permitted access to the Real Estate at reasonable times and upon
232  reasonable notice, and such persons shall be permitted to take photographic or video imagery of areas of the Real Estate
233  for use in reporting and further examination of its condition.

234  Buyer shall be responsible for any damage to the real estate caused by Buyer or Buyer's inspectors or contractors, which
235  repairs shall be completed in a timely and workmanlike manner at Buyer's expense.

236  Buyer understands and agrees that the inspection report(s) are not to be considered a list of required repairs and/or
237  corrections to the Real Estate. Buyer understands that the inspection report(s) may include notes which are for
238  informational purposes only and do not reflect the condition of the Real Estate. Buyer agrees that Seller is not required to
239  bring the Real Estate improvements up to the standards of current building code(s) that are now applicable in the area
240  where the Real Estate is located. Buyer understands that, except as may be further agreed in writing, Seller is not required
241  to make any corrections that may be noted in the inspection report(s).

242  Buyer ☐ has  ☑ has not  received the Seller's disclosure of any lead-based paint or lead-based paint hazards known to Seller on
243  the Real Estate, OR ☐ N/A for unimproved properties or for improved properties built 1978 or later.

244  Buyer ☑ has  ☐ has not  ☐ not applicable  received the pamphlet *"Protect Your Family From Lead in Your Home"*
245  *Notwithstanding anything to the contrary herein, certain loan types may require certain inspection(s). If so required, Buyer*
246  *and Seller agree to comply with the lender's requirements.*

247  ☐ **BUYER WAIVES THE RIGHT TO CONDUCT ANY AND ALL REAL ESTATE INSPECTIONS.**

248  ☐ **BUYER ELECTS TO CONDUCT LIMITED INSPECTION OF THE REAL ESTATE.** Buyer's inspection contingency
249  is limited to inspection of ONLY the following: ☐  Termite and wood-boring insects, ☐  Lead-Based Paint ☐  Other: ___
250  _____.

251  ☑ **BUYER ELECTS TO CONDUCT FULL INSPECTION OF THE REAL ESTATE.** Buyer's inspection contingency is
252  unlimited in scope. Buyer may, but shall not be required to, conduct an inspection of any and all qualities, conditions and aspects of the
253  Real Estate, its land, and its improvements. By way of example, this shall include, but shall not be limited to: survey, fixtures, operating
254  systems, air conditioning, heating, roofing, pool, water quality/quantity, structural integrity, well, septic system, cistern, plumbing,
255  fireplace, mold, electrical, asbestos, radon, infestations, termite and wood-boring insects, lead-based paint, tree(s) quality and condition.

256  In accordance with Buyer's above election:

257  A. Buyer shall have a period of  14  calendar days (the "Inspection Period,") beginning on the day following
258     the Contract Acceptance Date, to conduct and complete any and all inspections of the Real Estate. Prior to the end of the
259     Inspection Period, Buyer shall:

260     i. Provide to Seller a signed, written request for Seller to correct any material conditions or matters adversely affecting
261        the Real Estate (the "Defect Notice.") The Defect Notice shall identify the conditions to which Buyer is requesting
262        correction by Seller, and shall include the relevant portion(s) of the inspection report(s) which describe the conditions
263        to be corrected. Buyer agrees that minor, routine maintenance and cosmetic items are not to be considered
264        material and Buyer may not object to these in the Defect Notice.

265     **OR**

266     ii. Provide to Seller a signed, written notice of Buyer's satisfaction with the quality and condition of all aspects of the
267         Real Estate, its land, and its improvements (the "Notice of Satisfaction".)

268     **DELIVERY OF EITHER NOTICE IN THIS SECTION 14.A. SHALL DESIGNATE THE END OF THE
269     INSPECTION PERIOD. IN THE EVENT THAT BUYER SHALL FAIL TO TIMELY PROVIDE ANY
270     REQUIRED, WRITTEN NOTICE TO SELLER, BUYER SHALL BE DEEMED TO HAVE WAIVED ANY
271     FURTHER INSPECTIONS AND TO HAVE PROVIDED A NOTICE OF SATISFACTION TO SELLER.**

272  B. In the event that Buyer has timely delivered to Seller a Defect Notice, Seller shall have a period of up to  N/A  calendar
273     days (the "Consideration Period,") beginning on the day following the delivery of the Defect Notice, to evaluate Buyer's
274     request for correction(s). Prior to the end of the Consideration Period, Seller shall:

275     i. Provide to Buyer a signed, written agreement to correct all defects in the manner detailed and requested in Buyer's Defect Notice;

276     **OR**

277     ii. Provide to Buyer a signed, written counter-offer detailing Seller's agreement, if any, to correct defects identified in
278         Buyer's Defect Notice. Seller shall deliver such counter-offer even if Seller is not agreeing to correct any defects.

Buyer's Initials [AT] [ ]  Date / Time _____  Seller's Initials [✓] [ ]  Date / Time 5/8/2024, 1:00 p.m.

279  **DELIVERY OF EITHER NOTICE IN THIS SECTION 14.B. SHALL DESIGNATE THE END OF THE**
280  **CONSIDERATION PERIOD. IN THE EVENT THAT SELLER SHALL FAIL TO TIMELY PROVIDE ANY**
281  **REQUIRED, WRITTEN NOTICE TO BUYER, SELLER SHALL BE DEEMED TO HAVE AGREED TO**
282  **CORRECT DEFECTS IN THE MANNER DETAILED AND REQUESTED IN BUYER'S DEFECT NOTICE.**

283  C. In the event that Seller has timely delivered to Buyer a written counter-offer under Section 14.B.ii., the parties shall have
284     up to N/A_____ calendar days (the "Settlement Period,") beginning on the day following the delivery of such counter-
285     offer, to reach a mutual, signed, written agreement detailing Seller's correction of defects, if any.

286     **DELIVERY OF ANY MUTUALLY SIGNED, WRITTEN AND ACCEPTED COUNTER-OFFER FOR**
287     **CORRECTION OF DEFECTS (OR FOR NO CORRECTION OF DEFECTS) DURING THE SETTLEMENT**
288     **PERIOD SHALL END THE SETTLEMENT PERIOD.** *IN THE EVENT THAT THE PARTIES FAIL TO REACH*
289     *A MUTUAL, SIGNED, WRITTEN AGREEMENT UNDER THIS SECTION 14.C., THIS CONTRACT SHALL*
290     *AUTOMATICALLY TERMINATE.*

291  D. Notwithstanding the forgoing, this Section 14.D. provides limited circumstances in which a Buyer may elect to **not** provide
292     a Defect Notice to Seller, and may unilaterally terminate this Contract without further opportunity for Seller's correction of
293     defect(s). In the event that Buyer's inspections reveal Real Estate condition(s), which conditions were not disclosed by
294     Seller prior to the Contract Acceptance Date and that evidence one or more of the following, specific matters: conditions
295     adversely affecting the structural integrity of the building(s), the presence of asbestos, the presence of lead-based paint, the
296     presence of any other Hazardous Materials (as defined below), and/or Other: ANYTHING DEEMED SAFETY/HABITABILITY ISSUE
297     and Buyer does not wish to provide Defect Notice to Seller in accordance with Section 14.A., then prior to the end of the
298     Inspection Period, Buyer shall deliver to Seller signed, written notification of Buyer's election to terminate the Contract (the
299     "Contract Termination Notice"), which Contract Termination Notice shall also identify the specific condition, together with
300     the relevant portion of Buyer's inspection report(s) evidencing the existence of such condition. Upon timely delivery to
301     Seller of the Contract Termination Notice, this Contract shall be terminated.

302     For purposes of this subsection D, "Hazardous Materials" means: (a) substances defined as "hazardous substances," "hazardous
303     materials," or "toxic substances" under federal, state or local law; (b) asbestos and any form of urea formaldehyde foam
304     insulation, transformers or other equipment which contain dielectric fluid or other fluids containing levels of
305     polychlorinated biphenyls; and (c) any other chemical, material or substance, exposure to which is prohibited, limited or
306     regulated by any governmental authority and poses a hazard to the health or safety of the occupants of the Real Estate.

307  **15. PROPERTY SURVEY:** Buyer acknowledges that it is Buyer's responsibility to confirm the location of the boundary lines
308  and/or to confirm the location of the improvements upon the Real Estate relative to such boundary lines, setback lines and/or
309  easements. Buyer, at Buyer's expense, shall obtain any survey of the Real Estate desired by Buyer and/or required by Buyer's
310  lender. If Buyer desires for Buyer's obligations under this Contract to be contingent upon Buyer's satisfactory review of
311  evidence of survey, Buyer must complete any desired survey and proceed in accordance with the timelines and process
312  stated Section 14., herein. (Note: Any survey evidence required by lender is not subject to Buyer's Inspection contingency
313  and may still impact lender's terms and conditions to lend.)

314  **16. PROPERTY INSURANCE VERIFICATION CONTINGENCY:** Buyer(s) acknowledges that it is Buyer's sole
315  responsibility to make inquiries and to confirm availability and cost of any and all policy(ies) of insurance reasonably desired by
316  Buyer and/or required by Buyer's lender, including, but not limited to, hazard, flood and personal property insurance. **BUYER IS**
317  **RELYING ON BUYER'S OWN UNDERSTANDING OF INSURANCE TO BE OBTAINED.** Buyer shall have Fourteen
318  (14) calendar days beginning the day following the Contract Acceptance Date to confirm that such insurance policy(ies) is/are
319  available and that the cost is acceptable to Buyer and Buyer's lender. If Buyer cannot obtain such policy(ies) and/or if the cost is
320  not acceptable to Buyer or Buyer's lender, then Buyer shall have the right to terminate this Contract by providing written
321  notification to Seller before the expiration of this Fourteen (14) calendar day period. If Buyer does not timely deliver to Seller a
322  written notice of termination, this contingency shall be waived.

323  **17. SELLER'S COOPERATION:** Seller agrees to make the Real Estate available, at reasonable hours, for access by licensed
324  real estate agents/brokers and Buyer, Buyer's inspectors, licensed appraisers and other authorized parties as required in order to
325  satisfy the terms of the Contract. Seller shall have ALL utilities servicing the Real Estate on during the pendency of this
326  Contract. Buyer acknowledges that Buyer is not authorized to be present on the Real Estate without a licensed real estate
327  agent unless prior, express, written authorization is obtained from the Seller.

328  **18. OTHER CONTINGENCIES/AGREEMENTS:**
329  ☐ See attached Addenda which are signed by all parties and incorporated into this Contract:
330  All unpaid taxes to be paid by seller on or before closing date.
331  Seller paid water bill receipt due upon closing.
332  Current Tenant's deposit along with prorated month's rent will be credited to buyer at closing.
333  Any liens on the property to be pd in full by seller on or before closing.
334
335

Buyer's Initials ____  Date / Time _____    Seller's Initials ____  Date / Time 5/8/2024, 1:00 p.m.

Copyright October 1, 2021    Property Address: 426 Fountain Ave, Dayton, OH 45405    Page 7 of 10

336  **19. TITLE INSURANCE:** Title insurance is designed to protect the policyholder of such title insurance for covered losses
337  caused by defects in title (ownership) to the Real Estate that are in existence on the date and time the policy of title insurance
338  is issued. Title insurance is different from casualty or liability insurance. Buyer is encouraged to inquire about the benefits of
339  owner's title insurance from a title insurance agency or provider. **An Owner's Policy of Title Insurance, while not required,**
340  **is recommended. A Lender's Policy of Title Insurance, if required by the mortgage lender, does not provide protection**
341  **to the Buyer.** Buyer acknowledges that it is Buyer's sole responsibility to make inquiries with regard to owner's title insurance
342  prior to Closing.

343  1) ☒ **Buyer does not select an Owner's Policy of Title Insurance at this time.** Buyer may have the ability to obtain an Owner's
344  Policy of Title Insurance on or after the time of closing, but any decision to obtain an Owner's Policy of Title Insurance after
345  the date of Contract Acceptance shall be at Buyer's sole cost and expense and Buyer acknowledges that certain title premium
346  discounts that are available at the time of closing will not be available when an Owner's Policy of Title Insurance is purchased
347  at a later time.

348  2) ☐ **Buyer does select an Owner's Policy of Title Insurance, and:**
349      a) ☐ Buyer selects an Owner's Policy of Title Insurance at Buyer's expense.
350      b) ☐ Seller shall pay an amount not to exceed $300 towards the purchase of an Owner's Policy of Title Insurance and Buyer
351          shall be responsible for payment of the balance of the Owner's Policy of Title Insurance premium.
353      c) ☐ Seller shall pay the entire cost of an Owner's Policy of Title Insurance premium. When issued in connection with a
354          lender's policy, seller shall pay the difference between lender and owner's policy including any simultaneous issue fees.

355  **Seller's agreement to pay any amount toward the purchase of an Owner's Policy of Title Insurance shall only apply to**
356  **Buyer's election to purchase this policy at the time of closing.**

357  **20. PRORATIONS OF REAL ESTATE TAXES AND ASSESSMENTS:** Tax bills in Ohio are billed a full year in arrears.
358  Buyer shall be responsible for any and all property tax bills that come due and payable in the next, semi-annual period that begins
359  after the date of closing, including bills that relate to a period of ownership prior to Buyer's purchase. At Closing, Seller shall pay
360  or credit on the settlement statement (a) all real estate taxes and assessments, including, but not limited to, penalties and interest,
361  which became due and payable prior to and in the semi-annual period in which the Closing occurs, (b) a pro rata share, calculated
362  as of the closing date in the manner set forth below, of the real estate taxes and assessments becoming due and payable after the
363  closing, and (c) the amount of any agricultural tax savings accrued as of the Closing date which would be subject to recoupment
364  if the Real Estate were converted to a non-agricultural use (whether or not such conversion actually occurs), unless Buyer has
365  indicated that Buyer is acquiring the Real Estate for agricultural purposes.

366  ☐ If checked, Buyer hereby states that Buyer will use Real Estate for agricultural purposes and expressly waives Seller's payment
367  to Buyer of the estimated agricultural tax savings subject to CAUV recoupment.

368  **TAX PRORATIONS:** Unless otherwise stated herein, all tax prorations shall be final at Closing. All prorations of real estate taxes
369  shall be based upon the most recent available tax rates, assessments and valuations based upon the assessment method used by the
370  county in which the Real Estate is located. It is the intent of the Seller and Buyer that each shall pay the real estate expenses as
371  follows:

372  Seller's share is based upon the taxes and assessments which are a lien for the year of the Closing. Long Proration Method - Seller pays
373  entire taxes due which cover the tax period(s) up to the date of Closing.

374  ☒ **Short Proration Method:** ONLY CHECK THIS BOX IF THE SHORT PRORATION METHOD IS USED - Seller's share
375  shall be calculated as of the date of Closing, based upon the amount of the annual taxes (as determined by the most recently
376  assessed tax amounts) to establish a daily rate of taxes and then multiplying the daily rate by the number of days from the first
377  day of the current, semi-annual tax period to the date of Closing. If checked, the Short Proration Method shall be applicable and
378  shall supersede the provision to use the Long Proration Method.

379  **ASSESSMENTS:** Any special assessments are payable in a single annual installment and shall be prorated based upon the
380  assessment method selected above. Seller and Buyer acknowledge that actual bills received by Buyer after Closing for real
381  estate taxes and assessments may differ from the amounts prorated at Closing. However, all Closing prorations shall be final,
382  except for the following (if applicable): (i.e., tax abated property, new construction, etc.) **No Exceptions**
383  _____. Buyer shall assume responsibility for above items upon Closing.

384  **NEW CONSTRUCTION:** The Real Estate may contain a newly-constructed residence which at the time of Closing does not yet
385  appear on the most recent official tax duplicate available, so that the tax bill prorated at the Closing shows taxes for only the vacant
386  or partially improved land. Seller agrees that Seller is responsible for the amount of all real estate taxes assessed for the land and
387  the residence through the date of Closing, regardless of when assessed, and if one or more tax bills are issued after the Closing
388  which show taxes which were not prorated by Seller and Buyer at the Closing, Seller shall immediately pay the additional
389  appropriate prorated amount to Buyer upon delivery by Buyer of the new tax bill(s). This provision shall survive the Closing and
390  delivery of the deed, and the REALTOR® shall not be responsible for enforcement of this provision. Buyer shall be solely
391  responsible for inquiring about and determining any tax credits or abatements available to the Real Estate.

Buyer's Initials [ _MT_ ] [ ___ ]    Date / Time _____    Seller's Initials [ _VE_ ] [ ___ ]    Date / Time 5/8/2024, 1:00 p.m.

392  21. **OTHER PRORATIONS:** It is the intent of the Seller and Buyer that each shall pay the real estate expenses listed in (a) and
393  (b) below due for the period of time that each owns the Real Estate. There shall be prorated between Seller and Buyer as of
394  Closing: (a) homeowner/condominium association assessments and other charges imposed by the association under the terms of
395  the Association/Condominium Documents, if applicable, as shown on the most recent official Association statement available as
396  of the date of Closing, and/or, (b) rents and operating expenses if the Real Estate is rented to tenants. Security and/or damage
397  deposits held by Seller shall be transferred to Buyer at Closing without proration. Seller and Buyer acknowledge that prorations
398  are based on the information provided at closing and that actual amounts charged and/or collected for prorated items may differ;
399  however, all Closing prorations shall be final.

400  22. **CONVEYANCE AND CLOSING:** Closing services will be provided by title company designated by Buyer:
401  Home Services Title Company (937) 435-2580 _____ (title company name and phone
402  number). Title company and/or its attorney(s) do not represent either Buyer or Seller. If Buyer or Seller desires legal representation,
403  they shall hire their own attorney. Both Buyer and Seller agree to execute all documents required by the closing/escrow agent. At
404  Closing, Seller shall be responsible for transfer taxes/conveyance fees, Condominium or HOA transfer fees (this shall include any
405  and all administrative, association and/or management fees incurred as a result of the sale of the real estate, including, but not
406  limited to: new account set-up fees, certification fees, transfer fees, etc.), cost of acquiring HOA status letters, or any documents
407  required by the HOA to facilitate the transfer of the real estate, deed preparation, title company settlement fees chargeable to Seller,
408  the cost of removing or discharging any defect, lien or encumbrance required for conveyance of the Real Estate as required by this
409  Contract; and shall convey marketable title (as determined with reference to the Ohio State Bar Association Standards of Title
410  Examination) to the Real Estate by recordable and transferable deed of general warranty or fiduciary deed, if applicable, in fee
411  simple absolute, with release of dower. Title shall be free, clear and unencumbered as of Closing, with the exception of the
412  following, if applicable: (1) covenants, conditions, restrictions and easements of record, (2) legal highways, (3) any mortgage
413  expressly assumed by Buyer and agreed to by Seller's current lender in writing, (4) all installments of taxes and assessments
414  becoming due and payable after Closing, (5) zoning and other laws,   (6) homeowner/condominium association fees becoming
415  due and payable after Closing, and   (7) the following assessments (certified or otherwise): _____
416  _____. Seller shall have the right at Closing to pay out of the
417  Purchase Price any and all encumbrances or liens.
418  Date of Closing shall be TBD by seller's lawyer _____, or as mutually agreed by the parties. Notwithstanding
419  anything to the contrary, in the event that Buyer and Seller are proceeding in good faith performance under this Contract and
420  Closing cannot occur due to occurrence or circumstance out of the direct control of either party, the Date of Closing shall be
421  extended for a period of up to 7 calendar days. Unless otherwise agreed, such extension shall extend the terms of Possession and
422  Occupancy by an equal number of days as Closing was extended.
423  Make deed to: ~~MARCUS TURNER~~ Landlord Lifestyle, LLC                  [MT initials]

424  23. **POSSESSION AND OCCUPANCY:** Subject to rights of tenants, possession/occupancy shall be given
425  1) ☒ at Closing or
426  2) ☐ on or before _____ o'clock ☐ (A.M.) ☐ (P.M.) ☐ (Noon) EASTERN/DAYLIGHT STANDARD TIME on
427  _____ (date), or such earlier possession/occupancy date that the Seller so notifies the Buyer.
428  Until such time, Seller shall have the right of possession/occupancy free of rent, unless otherwise specified, but shall pay for all utilities
429  used. Seller shall order final meter readings to be made as of the occupancy date for all utilities serving the Real Estate and Seller shall
430  pay for all final bills rendered from such meter readings. Seller shall provide all keys, door openers, and information for items that
431  require codes/programming no later than the time of occupancy. Seller acknowledges and agrees that prior to Buyer taking possession
432  of the Real Estate, Seller shall remove all personal possessions not included in this Contract and shall remove all debris. If Seller fails to
433  vacate as agreed in this Contract or any attached post-closing occupancy agreement, Seller shall be responsible for all additional
434  expenses, including attorney's fees, incurred by Buyer to take possession as a result of Seller's failure to vacate. This provision
435  shall survive the Closing and delivery of the deed, and the REALTOR® shall not be responsible for enforcement of this provision.
436  24. **AGENCY DISCLOSURES:** Buyer and Seller acknowledge having reviewed the state-mandated agency disclosure statement(s).
437  25. **COMPANY SPECIFIC PROVISIONS:**
438  None at Present
439
440
441

442  26. **M.L.S. AND PUBLIC RECORD ACKNOWLEDGEMENT:** Seller and Buyer acknowledge that REALTOR® shall disclose
443  this sales information to any Multiple Listing Service to which REALTOR® is a member and that disclosure by M.L.S. to other M.L.S.
444  participants, affiliates, governmental agencies or other sources authorized to receive M.L.S. information shall be made. Seller and Buyer
445  acknowledge that sales information is public record and may be accessed and used by entities, both public and private, without the consent
446  of the parties. Seller and Buyer authorize REALTOR® to disclose financing settlement charges paid by Seller and other concession data
447  upon inquiry by other real estate professionals and to any authorized database, as applicable, to the extent necessary to establish accurate
448  market value.

Buyer's Initials [MT] [  ]   Date / Time _____   Seller's Initials [initials] [  ]   Date / Time 5/8/2024, 1:00 p.m.

449 **27. SOLE CONTRACT:** The parties agree that this Contract constitutes their entire agreement and no oral or implied
450 agreement exists. **ANY SUBSEQUENT CONDITIONS, AMENDMENTS AND/OR OTHER MODIFICATIONS TO**
451 **THIS CONTRACT SHALL NOT BE VALID AND BINDING UPON THE PARTIES UNLESS IN WRITING AND**
452 **SIGNED BY ALL PARTIES, UPON WHICH SUCH WRITTEN AGREEMENT SHALL BECOME AN INTEGRAL**
453 **PART OF THE CONTRACT.** This Contract shall be binding upon the parties, their heirs, administrators, executors,
454 successors and assigns.

455 This Contract may be executed in counterparts, each of which shall be deemed an original, but all of which, taken together,
456 shall constitute one and the same instrument. Faxes and Internet transmissions are an acceptable method of communication for
457 physical delivery of the Contract, addenda(s) and notifications in this transaction and shall be binding upon the parties.

458 **28. GENERAL TERMS:** This Contract shall be interpreted and construed in accordance with the laws of the State of Ohio. Any
459 and all Seller certifications, representations and/or warranties contained herein shall survive the actual date of closing for a period
460 of One (1) year. If any provision of this agreement shall be deemed unenforceable by a court of law, this agreement shall be
461 deemed modified only to the extent of such unenforceable provision(s) and the remainder of the agreement shall remain in full
462 force and effect.

463 **29. SELLER NON-FOREIGN STATUS.** Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real
464 property interest must, under certain circumstances, withhold tax if the transferor is a foreign person. If Seller is a foreign
465 person (as that term is defined in the Internal Revenue Code and Income Tax Regulations), Seller acknowledges and agrees
466 that at the time of Closing, Buyer may require tax withholding from Seller's proceeds up to the maximum amount permitted
467 by law.

468 **30. ELECTRONIC SIGNATURES:** Manual or electronic signatures on contract documents, transmitted in original, facsimile
469 or electronic format shall be valid for purposes of this Contract and any amendments, addendums or notices to be delivered in
470 connection with this Contract.

471 **31. INDEMNITY:** Seller and Buyer recognize that the REALTORS® involved in the sale are relying on all information
472 provided herein or supplied by Seller or Seller's sources and Buyer and Buyer's sources in connection with the Real Estate, and
473 agree to indemnify and hold harmless the REALTORS®, their agents and employees from any claims, demands, damages,
474 lawsuits, liabilities, costs and expenses (including reasonable attorney's fees) arising out of any referrals, misrepresentation or
475 concealment of facts by Seller or Seller's sources and/or Buyer and Buyer's sources.

476 **32. ELECTRONIC/WIRE FRAUD:** Email is not always secure or confidential. Never respond to a request that you send
477 funds or nonpublic personal information, such as credit card or debit card numbers or bank account and/or routing numbers
478 without first verifying the identity of the person requesting the information. If you receive an email message concerning a
479 transaction and the email requests that you send funds or provide nonpublic personal information, do not respond to the email
480 before verifying the identity of the person requesting the information and immediately contact the known individual/entity with
481 whom you have an established relationship using a separate verified method of communication to determine/notify of suspected
482 email fraud. Only send nonpublic personal information to a verified and authorized recipient, and via secure methods
483 of communication.

484 **33. ACKNOWLEDGMENT:** Buyer and Seller acknowledge that any questions regarding legal liability with regard to any provision
485 in this Contract, accompanying disclosure forms and addendums or with regard to Buyer's/Seller's obligations as set forth in this Contract
486 must be directed to Buyer's/Seller's attorney. In the event the Broker provides to Buyer or Seller names of companies or sources for
487 such advice and assistance, the parties additionally acknowledge and agree that the Broker does not warrant, guarantee, or endorse the
488 services and/or products of such companies or sources.

489 **34. CONTRACT ACCEPTANCE DATE:** As used herein, the Contract Acceptance Date shall be defined as the date on which
490 all provisions of the Contract have been accepted and agreed by all parties to the Contract, and the document reflecting the final
491 signatures of acceptance has been physically delivered to the other party ("Contract Acceptance Date"). **Contract performance**
492 **dates and contingencies in the Contract shall commence the day following Contract Acceptance Date.**

493 **35. EXPIRATION:** This offer is void if not accepted in writing on this Contract form, with this form physically delivered to
494 Buyer on or before ~~9~~ 5 _____ o'clock ☐ (A.M.) ☒ (P.M.) ☐ (Noon) EASTERN/DAYLIGHT STANDARD TIME
495 ~~05/03/2024~~    05/08/2024 _____ (date).

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.

Buyer's Initials [initialed]    Date / Time _____    Seller's Initials [initialed]    Date / Time 5/8/2024, 1:00 p.m.

Copyright October 1, 2021         Property Address: 426 Fountain Ave, Dayton, OH 45405         Page 10 of 10

496 **36. BUYER CERTIFICATION:** Buyer certifies and warrants that the signatory(ies) below has/have full authority to enter into
497 this agreement and that <u>any and all additional signatories, spouse* or otherwise</u>, who are necessary in order to purchase the property
498 or obtain lender financing for the Real Estate purchase have expressly agreed to sign such required purchase and/or financing
499 documents. (*Dower or other spousal rights may require signature of spouse even if spouse is not on loan or title deed.)

Marcus Turner  Landlord Lifestyle LLC
Print Buyer's Name          Signature of Buyer or authorized party          Date/Time

Print Buyer's Name          Signature of Buyer or authorized party          Date/Time

Buyer's Address 15741 NE 15TH ST, NORTH MIAMI BEACH, FL 33162

500 **37. ACTION AND CERTIFICATION BY SELLER:** The undersigned Seller has read and fully understands the foregoing
501 offer. Seller certifies and warrants that the signatory(ies) below are all of the title owners and each has/have full authority to enter
502 into this Contract and that <u>any and all additional signatories, spouse* or otherwise</u>, who are necessary in order to convey the Real
503 Estate, have expressly agreed to sign such required purchase and/or financing documents. (*Dower or other spousal rights may
504 require signature of spouse even if spouse is not on title deed.).

505 List all persons or entities, including yourself, who own any portion of the Real Estate and/or have an ownership interest in the
506 Real Estate (dower/ownership rights) and/or the names of the individuals whose signature is necessary in order to convey the real
507 estate:_____
508 _____. In the event of power of attorney, trust, corporation,
509 limited liability company, inheritance or other right to transfer, documentation of authority to convey the Real Estate shall be
510 provided to the title company/settlement agent upon request.

511 Seller hereby:
512 ☐ accepts said offer and agrees to convey the Real Estate according to the above terms and conditions,
513 ☐ rejects said offer, or
514 ☒ counteroffers according to the attached addendum, signed and dated by Seller, which counteroffer shall become null and
515 void if not accepted in writing on this Contract form, with this form physically delivered to Seller or Seller's agent on or before
516 ~~10~~ o'clock ☒ (A.M.) ☒ (P.M.) ☐ (Noon) EASTERN/DAYLIGHT STANDARD TIME _____May 10, 2024_____ (Date).

Joanne Friedmeyer  Trustee for the Ch. 7 Bank. Estate of Rodney Grubbs          1:00 p.m., May 8, 2024
Print Seller's Name          Signature of Seller or authorized party          Date/Time

Print Seller's Name          Signature of Seller or authorized party          Date/Time

Seller's Address_____

[ALL OWNERS AND SPOUSES OF OWNERS MUST SIGN.]

**THE INFORMATION PROVIDED BELOW IS FOR ADMINISTRATIVE PROCESSING**

---

**CONTRACT ACCEPTANCE DATE (DATE OF DELIVERY OF FINAL SIGNATURES):** _____.
                                                                                      (Date/Time)

Note: Until acceptance of final offer/counter-offer has been physically delivered to the other party, either party may rescind
their offer/counteroffer. Therefore, delivery of final contract to other party is to be made as soon as possible on the date of
final signature(s).

---

**RECEIPT OF EARNEST MONEY DEPOSIT:** Failure to provide written verification as provided in Section 3 of the Contract
to Purchase may result in Seller's termination of the Contract.

I hereby certify receipt of Earnest Money (☐ check/money order # _____, ☐ wire/electronic transfer # _____, ☐ cash, ☐ other
_____) in the amount of $_____.

I further certify that the funds shall be submitted for deposit in accordance with Ohio law and acknowledge that failure to deposit in a
timely manner is a violation of license law.

Irene Comeriato-Coulter/Coldwell Banker Heritage
                              REALTOR®'s Signature          Date/Time

## THE INFORMATION BELOW IS REQUIRED FOR MLS, TITLE, LENDER AND ADMINISTRATIVE PROCESSING

The signatories below grant permission to the settlement agent to provide to their respective Real Estate Broker or their authorized Sales Associates, copies of the Closing Disclosure and the Settlement Statement for review prior to Closing.

| Seller's Signature _____ Date/Time | Buyer's Signature _____ Date/Time |
| Seller's Signature _____ Date/Time | Buyer's Signature _____ Date/Time |

SELLING/BUYER'S REALTOR® Firm: Coldwell Banker Heritage

Address 4060 Executive Dr, Beavercreek, OH 45430

Broker Firm State License Number BRK.0700333098     Broker Firm MLS ID HRTG01

Contact (Agent) Name Irene Comeriato-Coulter

Contact (Agent) State License Number 202100889     Agent MLS Number COMEIRENE109

Contact (Agent) Email and Phone Irene@ColdwellBanker.com     937.829.2664

(Principal) Broker Name Melissa Zimmer

Close Transaction under Team Leader in MLS ☐ yes ☐ no

Team Name: _____  Team Leader: _____  MLS ID: _____

LISTING/SELLER'S REALTOR® Firm: _____

Address _____

Broker Firm State License Number _____  Broker Firm MLS ID _____

Contact (Agent) Name Jamie Day

Contact (Agent) State License Number _____  Agent MLS Number _____

Contact (Agent) Email and Phone jamie@jamieday.com

(Principal) Broker Name _____

Close Transaction under Team Leader in MLS ☐ yes ☐ no

Team Name: _____  Team Leader: _____  MLS ID: _____

10/01/2021

dotloop signature verification:



# ADDENDUM TO CONTRACT TO PURCHASE REAL ESTATE

**Property:** 426 Fountain Ave., Dayton, OH 45405

**Purchaser:** Landlord Lifestyle LLC

**Seller:** Joanne Friedmeyer, Trustee for the Chapter 7 Bankruptcy Estate of Rodney Grubbs

**CONTRACT TO PURCHASE REAL ESTATE Dated:** May 2, 2024

In reference to CONTRACT TO PURCHASE REAL ESTATE for property and parties named above, the undersigned Purchaser(s) and Seller(s) do hereby agree to the following:

The Agreement is countered with following terms and revisions to the Agreement. All Line numbers refer those contained in the Agreement

1. Lines 32-37 are struck, escrow to be held by Ohio-licensed seller's broker;
2. Lines 51-97 are struck, Buyer is paying cash, not financing.
3. Lines 111-122 are struck and replaced with the following "all non-affixed personal property contained in the Real Estate is property of the tenant and not included in this sale. Cooktop, range and refrigerator belong to tenant and are specifically excluded from this sale."
4. Lines 155-192 are struck, the Real Estate is no subject to a Homeowner's Association.
5. Line 272 is modified, Seller shall have a period of 7 calendar days to provide a written response to any Defect Notice;
6. Line 284 is modified, Settlement Period shall be 7 calendar days;
7. Line 410 is modified. Conveyance shall be by Trustee's Deed;
8. Lines 431-435 are modified, Real Estate is occupied by tenant whose personal property will not be removed prior to closing.
9. Line 473 is modified to strike the phrase "to indemnify";
10. Line 474 is modified to strike the phrase "(including reasonable attorneys fees)";
11. Lines 496 to 510 are struck;
12. The following provisions are added: "This Contract remains subject to, and expressly contingent upon, the granting of a motion to sell real estate free and clear of liens pursuant to 11 U.S.C. 363(f) to Buyer, Landlord Lifestyle LLC by the United State Bankruptcy Court for the Southern District of Indiana, Indianapolis Division in Case No. 23-05593-RLM-7A (hereinafter, "Bankruptcy Court Approval"). Closing shall occur within twenty-one (21) days of Bankruptcy Court Approval. Real Estate is currently occupied by a tenant on a month-to-month lease, sale of the Real Estate is subject to that tenancy. Buyer will be responsible for refunding security deposit to tenant as required under Ohio law. The sale of the Property as an As-Is sale, no improvements, changes or modifications will be made by Seller.

The herein addendum, upon its execution by both parties, is herewith made an integral part of the aforementioned CONTRACT TO PURCHASE REAL ESTATE.

Dated: _____

Purchaser: *Marcus Turner - owner* [dotloop verified 05/10/24 12:10 PM EDT]

Purchaser: _____

Witness: _____

Dated: May 8, 2024

Seller: [signature] Trustee
Joanne Friedmeyer, Trustee for the Chapter 7 Bankruptcy Estate of Rodney Grubbs

Witness: [signature]